# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

TIMOTHY ERIC WOLF CHILD,
            *Defendant-Appellant.*

No. 11-30241

D.C. No.
4:11-cr-00012-
SEH-1

OPINION

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, District Judge, Presiding

Argued and Submitted
July 12, 2012—Seattle, Washington

Filed October 23, 2012

Before: Mary M. Schroeder, Stephen Reinhardt, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Reinhardt

12807

---

**COUNSEL**

Daniel Donovan (argued), Great Falls, Montana, for the defendant-appellant.

Michael W. Cotter, United States Attorney; Danna R. Jackson (argued), Leif M. Johnson, Assistant United States Attorneys, Helena, Montana, for the appellee.

---

**OPINION**

REINHARDT, Circuit Judge:

Timothy Eric Wolf Child, a Native American, appeals a special condition of supervised release imposed by the district court after he pleaded guilty to attempted sexual abuse. The special condition, condition 9, prohibited Wolf Child from residing with or being in the company of any child under the age of 18, including his own daughters, and from socializing with or dating anybody with children under the age of 18, including his fiancée, in both cases unless he had prior written approval from his probation officer. The district court imposed the special condition without first making any specific findings regarding the necessity of restricting Wolf Child's ability to have contact with his children and his fiancée. It did so on the basis of a record devoid of evidence supporting the need for such a restriction with respect to his intimate family members. We hold that the fundamental right to familial association, implicated by the parts of the special condition prohibiting Wolf Child from residing with or being in the company of his own daughters and socializing with his

fiancée, is a "particularly significant liberty interest." The district court was therefore required to follow an enhanced procedural requirement to make special findings on the record supported by evidence in the record, that the condition is necessary for deterrence, protection of the public, or rehabilitation, and that it involves no greater deprivation of liberty than reasonably necessary. Because the district court made no such findings regarding the imposition of the special condition, and it conducted no individualized examination of Wolf Child's relationship with the affected family members, it committed procedural error with regard to these specific individuals. Moreover, because of the absence of any evidence in the record that would support the limitations on the fundamental liberty interests at issue, we hold that special condition 9, as applied to restrict Wolf Child's ability to reside or socialize with his own children and with his fiancée is substantively unreasonable.

In addition, we conclude that special condition 9 is overbroad both by virtue of prohibiting Wolf Child from being in the company of any child under the age of 18 under any circumstances and by similarly prohibiting him from dating or socializing with anybody who has children under the age of 18, regardless of the circumstances, without prior approval of his probation officer. On remand, if the district court deems it appropriate to adopt a special condition limiting Wolf Child's contact with children under the age of 18 (other than his own children) and associating with parents of children under the age of 18 (other than his fiancée) it must ensure that any such condition is reasonably necessary to accomplish the statutory goals of supervised release and that it infringes on his particularly significant liberty interests no more than reasonably necessary to accomplish those goals.

## FACTS AND PROCEDURAL HISTORY

Wolf Child is a member of the Chippewa Cree Tribe. On the morning of August 20, 2010, while at a house party on the

Rocky Boy Indian Reservation, Wolf Child, then 22 years old, attempted to have sex with B.M., a 16-year-old girl, who was intoxicated and unconscious. He admitted to kissing B.M. and rubbing her breasts and vaginal area, taking off her pants and underwear, pulling down his pants, and positioning himself in between her legs to have sex with B.M., and further admitted that his penis might have touched her vagina. Wolf Child stopped when another girl walked into the room.

Wolf Child was charged in a two-count indictment with attempted sexual abuse, in violation of 18 U.S.C. §§ 1153(a) and 2242(2)(B), and abusive sexual contact, in violation of 18 U.S.C. §§ 1153(a) and 2244(a)(2). He pleaded guilty to the attempted sexual abuse charge pursuant to a plea agreement and a sentencing hearing was held on August 25, 2011. During that hearing, the district judge stated generally that all of the 18 U.S.C. § 3553(a) factors had been taken into account in determining the sentence for Wolf Child. The district judge then discussed "some of the more specific aspects of the case" that had a direct bearing on the sentencing determination. First, the judge stated that "this is a serious crime by any assessment," noting that Wolf Child "took advantage of a passed-out young female," which resulted in "significant harm to the victim." Second, the judge noted that Wolf Child had "a long history of contributing to the delinquency of minors," as reflected in his tribal record, but mentioned no instances involving sexual activity aside from the conviction at issue here. Third, the judge stated that he carefully considered the arguments advanced on behalf of Wolf Child regarding his responsibility to his daughters and the hardship they would suffer due to his incarceration, but found that it was "not an appropriate consideration that has any weight." The district judge then concluded that the guidelines calculation was "not out of line for all factors considered in this case" and "not excessive, given the . . . totality of the circumstances," and sentenced Wolf Child to 86 months in prison and 10 years of supervised release.

Without additional discussion, the district judge imposed several special conditions of supervised release, including special condition 9, which ordered in relevant part that Wolf Child "shall not be allowed to do the following without prior written approval of United States Probation: [1] reside in the home, residence, or be in the company of any child under the age of 18; [2] go to or loiter near school yards, parks, playgrounds, arcades, or other places primarily used by children under the age of 18; or [3] date or socialize with anybody who has children under the age of 18." (hereinafter "special condition 9, parts 1, 2, and 3"). After the sentence had been announced, defense counsel sought to clarify whether special condition 9 barred Wolf Child from residing with or being in the company of his own daughters.[1] The district judge replied:

> Absolutely . . . . This man is now a convicted sex offender. And I will not allow him to have contact with children under the age of 18 without the approval of probation, as stated in the disposition. This man cannot be trusted with minor children, in the view of this court. And he will not be. We will have probationary supervision of this man. If the probation officer in charge of his case deems it appropriate, the probation officer will have the capacity to make that call. But it will not be allowed as a matter of course.

Defense counsel expressly objected to this condition as applied to Wolf Child's access to his own daughters, and the

---

[1]Wolf Child has several intimate relationships that are affected by special condition 9. He shares custody of his eldest daughter, who was seven years old at the time of his sentencing, with N.N., who began her romantic relationship with Wolf Child when she was 14 and he was 16 or 17 years old. Wolf Child and N.N. now maintain a platonic relationship. Wolf Child also has two younger children, aged two and three at the time of sentencing, with his fiancée W.F., with whom he has been in a serious relationship since she was 16 years old and he was 20 or 21.

judge replied "I understand. You may take that issue to the circuit if you wish to do so, counsel."

Wolf Child filed a timely Notice of Appeal.

## ANALYSIS

## I.

"We review for abuse of discretion the conditions of supervised release set by the district court and challenged on . . . appeal" when trial counsel objects to a supervised release condition. *United States v. Napulou*, 593 F.3d 1041, 1044 (9th Cir. 2010). When trial counsel fails to object to the imposition of a supervised release condition, "we review [the] conditions for plain error." *United States* v. *Johnson*, 626 F.3d 1085, 1088-89 (9th Cir. 2010). Because "a district court has at its disposal all of the evidence, its own impressions of a defendant, and wide latitude, . . . we give considerable deference to [its] determination of the appropriate supervised release conditions." *United States v. Weber*, 451 F.3d 552, 557 (9th Cir. 2006) (internal quotation marks and citation omitted). Conditions affecting fundamental rights, however, are "reviewed carefully." *United States v. Soltero*, 510 F.3d 858, 866 (9th Cir. 2007) (internal quotation marks and citation omitted). In imposing a condition of supervised release, the court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant" and "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct; . . . to protect the public from further crimes of the defendant; and . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. §§ 3583(d), 3553(a); *Napulou*, 593 F.3d at 1044. Under 18 U.S.C. § 3583(d), conditions of supervised release "must: (1) be reasonably related to the goals of deterrence, protection of the public, and/or defendant rehabilitation; (2) involve no greater deprivation of liberty than is reasonably

necessary to achieve those goals; and (3) be consistent with any pertinent policy statements issued by the Sentencing Commission." *Napulou*, 593 F.3d at 1044. The government bears the burden of establishing the necessity of any condition of supervised release. *Weber*, 451 F.3d at 558.

In reviewing a sentence, including a condition of supervised release, we first determine whether the district court committed procedural error. *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc). "It would be procedural error . . . to fail adequately to explain the sentence selected," and the district court must provide a sufficient explanation to "permit meaningful appellate review" and communicate "that a reasoned decision has been made." *Carty*, 520 F.3d at 992-93. "While we have held that the district court need not state at sentencing the reasons for imposing each condition of supervised release, that is only true *if the reasoning is apparent from the record*." *United States v. Collins*, 684 F.3d 873, 890 (9th Cir. 2012) (emphasis in original) (internal quotation marks, alteration and citation omitted). Moreover, there is an exception for conditions of supervised release that implicate a "particularly significant liberty interest," in which case "the district court must support its decision to impose the condition on the record with record evidence that the condition of supervised release sought to be imposed is *necessary* to accomplish one or more of the factors listed in § 3583(d)(1) and involves no greater deprivation of liberty than is reasonably necessary." *United States v. Stoterau*, 524 F.3d 988, 1005 (9th Cir. 2008) (internal quotation marks, brackets and citation omitted) (emphasis added); *see also Weber*, 451 F.3d at 568 (describing these "enhanced procedural requirements"). Additionally, when a supervised release condition targets a defendant's right to associate with an intimate family member, the district court must "undertake an individualized review" on the record of the relationship between the defendant and the family member at issue to determine whether the restriction is necessary to accomplish the goals of deterrence, protection of the public, or rehabilitation. *Napulou*, 593 F.3d at 1047.

We then review the substantive reasonableness of the supervised release conditions, "accounting for the totality of the circumstances presented to the district court." *Collins*, 684 F.3d at 887 (internal quotation marks and citation omitted). A supervised release condition is substantively unreasonable if it "is not reasonably related to the goal[s] of deterrence, protection of the public, or rehabilitation of the offender," *id.* at 892, or if it infringes more on the offender's liberty than is "reasonably necessary" to accomplish these statutory goals, 18 U.S.C. § 3583(d)(2). "The touchstone of 'reasonableness' is whether the record as a whole reflects rational and meaningful consideration" of those factors. *United States v. Rudd*, 662 F.3d 1257, 1261 (9th Cir. 2011) (internal citation and quotation marks omitted). Finally, when appropriate, we also examine whether a challenged condition of supervised release is impermissibly vague in violation of the requirements of due process, or overbroad, thereby restricting more of the defendant's liberty than necessary. *See Soltero*, 510 F.3d at 865-66.

Applying this framework, in Sections II.A and B we examine whether the district court complied with the applicable procedural requirements when it imposed parts 1 and 3 of special condition 9 insofar as they apply to prohibit Wolf Child from being in the company of his own children or socializing with his fiancée. In Section II.C we respond to the government's argument that the district court was not required to follow the enhanced procedures that apply to supervised release conditions that infringe on a defendant's particularly significant liberty interests because Wolf Child may seek and obtain written permission from a probation officer not to follow these restrictions in certain circumstances to be determined by the probation officer. In Section II.D we examine whether these restrictions on Wolf Child associating with his own children and fiancée are substantively reasonable. Finally, in part III we consider whether parts 1 and 3 of special condition 9 are overbroad in prohibiting Wolf Child from having contact with *any* minors under the age of 18 (other than his daughters) or *any* adults with children under the age of 18 (other than his

fiancée) without his probation officer's prior written permission. Because Wolf Child has not challenged any facet of part 2 of special condition 9, which prohibits him from going to or loitering in places primarily used by children, we do not consider whether part 2 was properly imposed or whether it is substantively reasonable or overbroad. Rather, part 2 remains in effect as is.

## II.

### A.

**[1]** We first consider part 1 of special condition 9, which prohibits Wolf Child from residing with or being in the company of children under the age of 18, insofar as it prohibits contact with his own daughters. We start by determining whether the district court committed procedural error in imposing the special condition. *See Carty*, 520 F.3d at 993. Before doing so, however, we must determine what procedure the district court was required to follow prior to imposing this particular condition. As explained in Section I, above, the district court is ordinarily not required to explain on the record its reasons for imposing each condition of supervised release. *Stoterau*, 524 F.3d at 1005. There is an exception, however, for conditions that implicate a "particularly significant liberty interest"; those conditions trigger the "enhanced procedural requirement" described in *Stoterau* and *Weber*. *Id.*; *Weber*, 451 F.3d at 561, 568. Part 1 of special condition 9 implicates such an interest.

**[2]** We have previously held that "[a] ban on associating with a 'life partner' implicates [a particularly significant liberty] interest." *Napulou*, 593 F.3d at 1041. The fundamental liberty interest in having contact with one's children is equally, if not more, significant. "The substantive due process right to family integrity or to familial association is well established. A parent has a fundamental liberty interest in companionship with his or her child." *Rosenbaum v. Washoe*

*Cnty.*, 663 F.3d 1071, 1079 (9th Cir. 2011) (internal quotation marks and citation omitted). It "is perhaps the oldest of the fundamental liberty interests recognized by [the Supreme Court]." *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality). "This interest occupies a unique place in our legal culture, given the centrality of family life as the focus for personal meaning and responsibility. 'Far more precious than property rights,' parental rights have been deemed to be among those 'essential to the orderly pursuit of happiness by free men,' and to be more significant and priceless than 'liberties which derive merely from shifting economic arrangements.' " *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 38 (1981) (Blackmun, J., dissenting) (quoting multiple Supreme Court cases) (individual citations omitted); *see also id.* at 27 (majority opinion) (acknowledging that "[t]his Court's decisions have by now made plain beyond the need for multiple citation that a parent's desire for and right to the companionship, care, custody and management of his or her children is an important interest" and that infringement on this right "work[s] a unique kind of deprivation") (internal quotation marks and citation omitted); *Wallis v. Spenser*, 202 F.3d 1126, 1136 (9th Cir. 2000) (describing parents' right to familial association as an "essential liberty interest").

**[3]** There can be no doubt that the fundamental right to familial association is a particularly significant liberty interest, and that part 1 of special condition 9 implicates that interest.[2] This does not mean that part 1 is necessarily invalid. "The

---

[2]Although Wolf Child is an unwed father, the government does not argue that his interest in having contact with his daughters is diminished or nonexistent as a result of that fact. Nor could it, as the evidence in the record establishes that Wolf Child has been an active and loving father, living with his two youngest daughters, and sharing custody of his oldest daughter. "When an unwed father demonstrates a full commitment to the responsibilities of parenthood by coming forward to participate in the rearing of his child," as Wolf Child has with his three daughters, "his interest in personal contact with his child acquires substantial protection under the due process clause." *Lehr v. Robertson*, 463 U.S. 248, 261 (1983).

existence of a constitutionally protected liberty interest . . . does not render impermissible any condition that would interfere with the parent-child relationship." *United States v. Davis*, 452 F.3d 991, 995 (8th Cir. 2006). The parents' fundamental right to familial association "is not absolute" and "must be balanced against the interests of the state, and when conflicting, against the interests of the children." *Kruse v. Hawai'i*, 68 F.3d 331, 336 (9th Cir. 1995) (internal quotation marks and citations omitted). Interference with that right, however, requires "a powerful countervailing interest," *Lassiter*, 452 U.S. at 27 (internal quotation marks and citation omitted), and strict adherence to procedures is required. Prior to imposing part 1 of special condition 9 the district court was required to follow the enhanced procedural requirement described above: specifically, it was required to "support its decision to impose the condition on the record with record evidence that the condition . . . is necessary to accomplish one or more of the factors listed in § 3583(d)(1) and involves no greater deprivation of liberty than is reasonably necessary." *Stoterau*, 524 F.3d at 1005 (internal quotation marks, brackets and citation omitted). It is not enough that a reviewing court may be able to piece together such evidence from its own review of the record. Rather, the sentencing court, at the time it imposes the restrictive condition on the exercise of a particularly significant liberty interest, must itself point to the evidence in the record on which it relies and explain how on the basis of that evidence the particular restriction is justified. *Napulou*, 593 F.3d at 1047.

**[4]** The district court here did not comply with the preceding requirements for imposing conditions that infringe on particularly significant liberty interests. Instead the district court simply imposed special condition 9 without providing any explanation until counsel objected to its applicability to Wolf Child's right to reside with or be in the company of his own children. In response to that objection, the"on the record" justification the district court provided for the restriction was that

Wolf Child "is now a convicted sex offender" and "cannot be trusted with minor children."

**[5]** We need not consider whether a district court's justification of a supervised release condition, provided only after objection by defense counsel, satisfies the enhanced procedure required by *Napulou* and its predecessors because here the district court's response fails to meet the procedural standard in any event. The district court pointed to no evidence in the record to support its determination that Wolf Child could not be trusted with any minor children, even his own. Moreover, its declaration that Wolf Child is now a "convicted sex offender" is simply an announcement that he has pled guilty to the charge and cites to no evidence in the record regarding the nature of the particular offense or its relationship to the condition that restricts his ability to reside with or be in the company of his own daughters. Nor did the district court attempt to explain why the restriction involved "no greater deprivation of liberty than is reasonably necessary" to achieve deterrence, protection of the public, or rehabilitation. *See* 18 U.S.C. § 3583(d)(2). Therefore, the district court's "explanation" for part 1 of special condition 9's restrictions on Wolf Child's fundamental right to familial association did not comply with the procedures we have required for imposing such conditions. In sum, it fails to "support its decision to impose the condition on the record *with record evidence* that the condition of supervised release sought to be imposed is necessary to accomplish one or more of the factors listed in § 3583(d)(1) *and [fails to establish that it] involves no greater deprivation of liberty than is reasonably necessary*." *Stoterau*, 524 F.3d at 1005 (internal quotation marks, brackets and citation omitted) (emphasis added).

The district court's justification for part 1 of special condition 9 as it relates to Wolf Child's daughters was procedurally infirm for an additional reason. When a supervised release condition "singles out a person with whom the individual on supervised release has an intimate relationship, the sentencing

court must undertake an *individualized* review of that person and the relationship at issue . . . ." *Napulou*, 593 F.3d at 1047 (emphasis added). The same holds true when the district court purposefully burdens a defendant's familial relationship using a more generalized condition. Here, the district judge was fully aware of the relevant family relationships and stated that the impact of Wolf Child's sentence on his children was "not an appropriate consideration that has any weight with this court in any significant way," When Wolf Child's counsel objected to part 1 of special condition 9 as it applied to his daughters the district court's response was simply that "I will not allow him to have contact with children under the age of 18 without the approval of probation." The district court's refusal to exempt a defendant's intimate family members from an otherwise standard supervised release condition, as in Wolf Child's case, implicates his intimate family members as surely as would a separate condition. In such circumstances, "[o]nly an examination of all the relevant facts surrounding the relationship between [the defendant and his intimate relation] will provide a record sufficient to permit the district court, and a reviewing court, to arrive at an adequate answer as to whether a judicial prohibition against the intimate relationship at issue is warranted." *Napulou*, 593 F.3d at 1047. Thus, it is not enough for a district court to rely on broad generalities under such circumstances; instead it must consider "the history and characteristics of the defendant" and the history of his relationship with the affected intimate family members as well as the need for deterrence, protection of the public, and rehabilitation. 18 U.S.C. § 3583(d)(1). The two explanations given by the district court in response to counsel's objection do not constitute the individualized enquiry we have required.

First, the district court relied on the fact that Wolf Child is now a convicted sex offender. This runs contrary to our holding that "a generalized assessment based on the class of sex offenders generally, rather than on the particular sex offenses a defendant has committed or related offenses he is likely to

commit . . . , cannot fulfill the mandate that a term of supervised release satisfy the 'reasonably related' standard." *Weber*, 451 F.3d at 569; *accord Davis*, 452 F.3d at 995. This need to avoid generalizing across all sex offenders "is all the more important in cases such as this, where a particularly strong liberty interest is at stake." *Weber*, 451 F.3d at 566-67. Not all sex offenders are the same; nor are all who plead to a particular type of sex offense. Imposing a supervised release condition that implicates a particularly significant liberty interest based solely on a conviction of a particular type, without consideration of the facts of the specific case or the goals of supervised release, constitutes clear procedural error.

Second, the district court's conclusory statement that Wolf Child "cannot be trusted with minor children" is procedurally insufficient to support the application of part 1 of special condition 9 to Wolf Child's daughters. The statement does not explain why the fact that Wolf Child might pose a risk to certain minors demonstrates that he poses a risk to his *own children*. The generalization offered by the district court in response to counsel's objection falls short of what a sentencing court is required to do prior to imposing such an intrusive condition interfering with a familial relationship.

**[6]** The district court was required to consider all of the facts relevant to the relationships at issue, i.e. between Wolf Child and his daughters, to justify the all-encompassing scope of part 1 of special condition 9. *Napulou*, 593 F.3d at 1047. These facts include, for example, the type of relationship Wolf Child has had with each of his daughters; any evidence of abuse or mistreatment of them, or of any other minor children in his family, such that it could be concluded that he would violate a familial relationship; whether, as stated in the sentencing letters submitted in support of Wolf Child, the incident with B.M. was an instance of aberrant behavior; and any psychological evaluation to support or rebut the belief that Wolf Child cannot be trusted with minor children, including his own children. Here, the district court did even less

than the district court in *Napulou* because it did not even *mention* Wolf Child's relationships to his daughters, let alone perform a detailed examination of those relationships. This failure to examine the particular relationships between Wolf Child and his daughters was clear procedural error.

**B.**

**[7]** The same conclusion applies to part 3, the even broader portion of special condition 9, which prohibits Wolf Child from dating or socializing with anybody who has children under the age of 18, including his fiancée, W.F., without prior written approval of the probation officer. Because Wolf Child did not raise a specific objection to part 3 at trial, we review for plain error. *Johnson*, 626 F.3d at 1088-89. We reverse under that standard if there is "an (1) error, (2) that was clear or obvious, (3) that affected substantial rights, and (4) that seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.* at 1088 (internal quotation marks and citation omitted).

**[8]** As we have already explained, a defendant's romantic relationship with his life partner, in this case Wolf Child's fiancée, is a relationship that implicates a particularly significant liberty interest in intimate association. *Napulou*, 593 F.3d at 1047. Moreover, prohibiting Wolf Child from socializing with W.F. also has the practical effect of prohibiting him from associating with the daughters he and W.F. had together. Yet the district court never mentioned the effect part 3 of special condition 9 would have on Wolf Child's relationship with W.F. or his daughters.[3] The failure to point to any evidence

---

[3]Normally we would construe part 3 not to apply to W.F. because we adopt narrowing constructions of release conditions when necessary to ensure that they "involve no greater a deprivation of liberty than is reasonably necessary." *United States v. Goddard*, 537 F.3d 1087, 1089 (9th Cir. 2008). Here, however, the district court's intent that special condition 9 impinge on Wolf Child's right to familial association is sufficiently evident from its discussion of part 1 of the special condition, pertaining to Wolf Child's ability to reside with or be in the company of his daughters that we are foreclosed from adopting a narrowing construction of part 3 of the condition as well.

in the record to justify this part of special condition 9, or to conduct an individualized enquiry examining the impact it could have on Wolf Child's relationship with W.F. and his daughters, or indeed to examine the nature of his relationships with any of those individuals before subjecting him to the special condition in question, was plain procedural error for the same reasons it was procedural error to impose restrictions on Wolf Child's ability to reside with or be in the company of his children.

## C.

The government contends that even these most highly restrictive parts of special condition 9 do not substantially limit Wolf Child's liberty interests because his probation officer may in his discretion authorize exceptions to the prohibitions. For that reason, the government contends, enhanced procedures do not apply.

It is true that we have recognized that delegation of authority to a probation officer to allow a defendant to engage in certain activities while on supervised release may help mitigate the severity of a condition restricting such activities. *See, e.g., United States v. Blinkinsop*, 606 F.3d 1110, 1121 (9th Cir. 2010) (probation officer's discretion can alleviate the harshness of a condition on loitering where children congregate); *see also United States v. Quiznon*, 643 F.3d 1266, 1274 (9th Cir. 2011). We have also acknowledged that the fact that a defendant is able to engage in certain types of activities with permission from a probation officer, as opposed to being prohibited entirely from engaging in those activities, might justify a finding that a narrowly tailored condition infringes on no more liberty than necessary. *See Quiznon*, 643 F.3d at 1274. Nevertheless, the interposition of a probation officer does not change the threshold analysis of whether the liberty interest being protected is a particularly significant one or whether there is justification in the record for infringing upon the defendant's particularly significant liberty interest in

familial association. If the record does not justify imposing a supervised release condition that infringes on a defendant's liberty interests, the limiting condition may not be imposed simply because a probation officer has the authority to mitigate the severity of the improper deprivation of liberty.

**[9]** Here, parts 1 and 3 of special condition 9, insofar as they prohibit Wolf Child from residing with or being in the company of his daughters and socializing with or dating his fiancée, were improperly imposed; the district court did not comply with the enhanced procedural requirement applicable to conditions of supervised release that implicate a particularly significant liberty interest, nor, as we explain below, does the record as a whole support imposition of the infringing conditions. That Wolf Child might nonetheless be able to see his daughters or his fiancée if he obtains permission from a probation officer is therefore irrelevant.[4]

## D.

Ordinarily, we might simply remand parts 1 and 3 of special condition 9 in their entirety to the district court so that it might follow the procedures that govern the imposition of special conditions that restrict the defendant's exercise of particularly significant liberty interests in familial association. *See, e.g.*, *Weber*, 451 F.3d at 570 (remanding for district court to make on-the-record findings to support imposition of con-

---

[4]In light of our holding, we need not determine whether the delegation here violates the principle that a probation officer "may not decide the nature or extent of the punishment imposed upon a probationer, since under our constitutional system the right to impose the punishment provided by law is judicial." *Stephens*, 424 F.3d 876, 881 (9th Cir. 2005) (internal quotation marks, ellipses and citations omitted); *see also United States v. Esparza*, 552 F.3d 1088, 1091 (9th Cir. 2009). We note, however, that at least one other circuit has held that delegating to a probation officer the decision whether a defendant may have contact with his children is an impermissible abdication of judicial authority. *See, e.g.*, *Voelker*, 489 F.3d at 154.

dition implicating particularly significant liberty interest); *United States v. Cope*, 527 F.3d 944, 955 (9th Cir. 2008) (same). However, when a part of a condition substantially infringes on fundamental liberties and when the record is sufficient to determine that there is no plausible basis for the imposition of that part of the condition, the offending part must be excised and we remand solely to allow the district court to revise the remaining parts. *See Soltero*, 510 F.3d at 867 (remanding an overbroad restriction on defendant's right to free association with instructions to excise the offending part of the condition) *United States v. Lonjose*, 663 F.3d 1292, 1303 (10th Cir. 2011) (reversing condition prohibiting defendant from having contact with his son where there was "absolutely no evidence in the record" that he posed a danger to the son, and remanding only for district court to devise a more limited condition that did not infringe on defendant's fundamental right to familial association); *Davis*, 452 F.3d 991, 996 (8th Cir. 2006) (finding district court erred by not conducting an individualized analysis of defendant's threat to his daughter and striking the impermissible part condition because "no evidence in the record" supported a conclusion that he might sexually assault his own daughter).

**[10]** Here, although we remand parts 1 and 3 of special condition 9 to allow the district court to remedy their overbreadth, *see infra* Section III, it is clear from the record that the parts of special condition 9 that prohibit Wolf Child from residing with or being in the company of his children and socializing with or dating his fiancée are substantively unreasonable and may not be reimposed. Nothing in the record would support a finding that these restrictions on his fundamental liberties involve no greater deprivation of liberty than is reasonably necessary to accomplish the goals of deterrence, protection of the public, or rehabilitation.[5]

---

[5]In *Napulou* we remanded to the district court to determine whether any restrictions on Napulou's association with her life partner were appropri-

Even when we examine the generalized findings of the district court during the sentencing hearing and all of the facts in the record, rather than limiting our review to the court's specific justifications for imposing parts 1 and 3 of special condition 9, we find no support for prohibiting Wolf Child from residing with or being in the company of his own daughters or dating or socializing with his fiancée during the ten years of his supervised release. In imposing Wolf Child's sentence, the district court stated that the defendant had "a long history of contributing to the delinquency of minors," as reflected in his tribal record. The record reflects that Wolf Child has one conviction for contributing to the delinquency of a minor, two pending charges, two dismissed charges, and one charge with an unknown disposition from when he was 18 years old. The record is devoid of any facts regarding most of these convictions or charges, although based on a review of concurrent charges, none appears to have involved a sexual offense. Indeed, Wolf Child had never been charged with any sexual offense until the one for which he was sentenced here. Instead, the use of alcohol or drugs, sometimes in the presence of minors, is the common theme that connects Wolf Child's past history of offenses involving minors.[6] It is also

_____

ate. In that case, however, unlike here, the district court had suggested a plausible reason why the defendant should be prohibited from having contact with her life partner. Specifically, the district judge recalled based on previous experience, and stated on the record, that Napolou's life partner was "a good manipulator" and the life partner's relationship with a previous ex-felon girlfriend had "devolved into violence." *See* 593 F.3d at 1046. Accordingly, remand was appropriate for the district court to develop a record as to whether the life partner had "improved her own behavior" since that time and to examine her role "in shaping Napulou's conduct and attitudes." *Id.* Here, as we explain below, nothing in the record, and nothing said at sentencing, provides any reason to think Wolf Child might pose a threat to his own daughters or his fiancée or her children (of whom Wolf Child is the father).

[6]The most recent incident reported in the record, a dismissed charge for endangering the welfare of a child, involved an allegation that Wolf Child,

true, of course, that on one occasion — the occasion that produced the plea in the instant case — he attempted to engage in sexual relations with a sixteen year old girl who had passed out from the overconsumption of alcohol. This record does not, however, support imposition of prohibitions on Wolf Child's residing with or being in the company of his daughters or socializing with his fiancée. We cannot justify the imposition of conditions of supervised release that so drastically infringe on the fundamental right to familial association on the basis of a record devoid of any suggestion that Wolf Child poses a sexual risk to his daughters or to his fiancée (or to her daughters, of whom he is the father).[7]

The district court also stated at sentencing that "this is a serious crime by any assessment," noting that Wolf Child "took advantage of a passed-out young female" and caused "significant harm to the victim." We agree. Wolf Child committed a serious offense against a young woman who undoubtedly suffered great harm as a result, and his conduct merits the severe punishment that the district judge imposed. The gravity of the instant offense, however, is not a sufficient reason to deprive Wolf Child of his fundamental right to reside with and be in the company of his daughters during the 10 years of his supervised release that follows his seven year

then 23 years old, served alcohol to persons under the age of 21 while hosting a party where small children were present. His only conviction for contributing to the delinquency of a minor involved a concurrent conviction for public intoxication. Similarly, both of the pending charges for contributing to the delinquency of a minor were filed concurrently with charges involving alcohol or drug-related offenses and involve no charges that would suggest inappropriate sexual behavior.

[7]Special conditions 1-4, which prohibit Wolf Child's consumption of alcohol and drugs during the supervised release period and subject him to up to 104 urinalysis and breathalyzer tests annually are designed to address Wolf Child's problems in these areas. These conditions should have been considered, along with the other facts, by the district judge in considering whether any limitation on Wolf Child's fundamental liberty in familial association was necessary.

prison sentence. Although the facts that make a particular offense serious may justify a lengthy sentence to be followed by particular supervised release conditions designed to promote the goals of deterrence, protection of the public, or rehabilitation, the mere fact that the offense is serious does not justify the imposition of supervised release conditions for punitive or other purposes not contemplated by § 3583(d)(1). *Compare* 18 U.S.C. § 3553(a)(2)(A) (listing the seriousness of the offense as a factor to consider in imposing a sentence), *with* 18 U.S.C. § 3583(d)(1) (listing some § 3553(a) factors, but not the seriousness of the offense, as factors to consider in imposing conditions of supervised release).

The government next contends that the commission of the instant offense, coupled with the relationships Wolf Child had with N.N. and W.F., who were 14 and 16 years old, respectively, at the time they began their relationships with Wolf Child and with whom he fathered his three daughters, shows "a lack of self-control around underage females." The government ignores the fact that Wolf Child was close in age to N.N. and W.F. at the time of those relationships: he was a teenager, between 16 and 17 years old, when he dated N.N., and between 20 and 21 years old when he began dating W.F. More important, there is no indication that these relationships were anything but consensual. Wolf Child and N.N. were in a relationship for three years, shared custody of their daughter, and continue to do so, as well as to maintain a platonic relationship. Wolf Child and W.F. lived together with their daughters prior to his arrest in this case, and the two plan to marry. In fact, many of the sentencing letters from friends and family refer to W.F. as his wife. That N.N. and W.F. were underage at the time they began their long-term relationships with Wolf Child does not demonstrate that he has a "lack of self-control around underage females."[8]

---

[8]As to Wolf Child's relationship with W.F., we note that 16 is the age of consent under Montana law, *see* MONT. CODE. ANN. § 45-5-

**[11]** Finally, nothing in the commission of the instant offense, an attempted sexual assault on a stranger, suggests that Wolf Child would violate a familial relationship or present a danger *to his own daughters*. To the contrary, the evidence in the record supports a finding that he is a good, caring and loving father. Even if the Government were correct that Wolf Child's prior romantic relationships demonstrate his sexual preference for or lack of control around young women, this would not demonstrate that he has shown a sexual proclivity towards his *own daughters* any more than an average heterosexual man's sexual preference for adult women suggests that he will develop a sexual preference for his own daughters once they become adults. Whatever the record shows as to Wolf Child's willingness to take advantage of other individuals, the record does *not* support a finding that Wolf Child presents a danger to his own daughters or will do so seven years from now.

**[12]** Nor does the record provide any substantive support for part 3 of special condition 9's restriction on Wolf Child's particularly significant liberty interest in associating with his fiancée, W.F. For the reasons already discussed, the record does not support a finding that Wolf Child would be a threat to the children they have together if he were to date or social-

---

501(1)(a)(ii)(D), as well as under the Model Penal Code and the law of the majority of states. *See Estrada-Espinoza v. Mukasey*, 546 F.3d 1147, 1153 (9th Cir. 2008) (en banc) (surveying state laws), *overruled on other grounds by United States v. Aguila-Montes de Oca*, 655 F.3d 915, 928 (9th Cir. 2011) (en banc); *see also* 18 U.S.C. § 2243 (defining sexual abuse of a minor as sexual acts with one who "has not attained the age of 16 years" and "is at least four years younger than" the defendant). As to his relationship with N.N., when Wolf Child was 16 or 17 years old, sexual relations between two minors hardly demonstrates that the elder of the two will have a lifelong proclivity for minor girls. Indeed, we have recognized that the model penal code, as well as federal law and the law of many states, criminalizes sexual contact with a minor under the age of 16 only if her partner is four or more years older than the minor. *See Estrada-Espinoza*, 546 F.3d at 1153; 18 U.S.C. § 2243.

ize with her. Nor does the record provide any reason to believe that Wolf Child would be a threat to W.F. herself. To the contrary, the PSR determined that the couple have a "healthy relationship and have plans of marriage," and in a letter to the district court W.F. stated that Wolf Child is "always at home with me and my girls" and that "[w]e all love him and cant [sic] wait for him to get out." In short, nothing in the record suggests that the relationship between Wolf Child and W.F. is anything other than a loving partnership and certainly nothing suggests that their association places their children in jeopardy from their devoted father.

**[13]** We therefore hold that parts 1 and 3 of special condition 9, to the extent that they prohibit Wolf Child from residing with or being in the company of his own daughters and from dating or socializing with his fiancée, are substantively unreasonable. The record fails to support a conclusion that these elements of special condition 9 are necessary to accomplish the goals of deterrence, protection of the public, or rehabilitation or that they involve "no greater deprivation of [Wolf Child's] liberty than is reasonably necessary" to accomplish those goals, 18 U.S.C. § 3583(d). Thus, the district court erred in applying parts 1 and 3 of special condition 9 to prohibit Wolf Child's association with his intimate family members. For this reason, on remand the district court may not reimpose any prohibitions on Wolf Child residing with or being in the company of his own daughters or socializing with or dating his fiancée during his ten-year term of supervised release.

We do not by this holding imply a per se rule that a supervised release condition may not infringe on a defendant's fundamental right to familial association. If the record before the district court demonstrates the need for such infringement — for example if a defendant has a proclivity for sexual violations of familial relationships — such a condition may be appropriate. *See, e.g.*, *Voelker*, 489 F.3d at 154 (noting that restriction on defendant's access to his children might be justified on remand, after district court followed appropriate pro-

cedures, where "the record contains evidence that supports a conclusion that [the defendant] may be capable of exploiting his own children" because he had exposed his daughter's buttocks online and made comments suggesting a willingness to offer her for sex with a stranger).

## III.

**[14]** Aside from the procedural and substantive unreasonableness of parts 1 and 3 of special condition 9 as they apply to Wolf Child's children and his fiancée, these parts of the special condition are overbroad. They impose significant restrictions on Wolf Child's right to free association by prohibiting him from "dat[ing] or socializ[ing] with *anybody* who has children under the age of 18" and from being "*in the company* of any child under the age of 18" without prior written permission from his probation officer. (emphasis added). Such restrictions on a defendant's right to free association are valid only if they "(1) [are] reasonably related to the goals of deterrence, protection of the public, and/or defendant rehabilitation; (2) involve[ ] no greater deprivation of liberty than is reasonably necessary to achieve these goals; and (3) [are] consistent with any pertinent policy statements issued by the Sentencing Commission." *Soltero*, 510 F.3d at 866. (internal quotation marks and citation omitted).

**[15]** We have invalidated broad conditions that restrict associational rights on several occasions. In *Soltero*, for example, we invalidated the part of a condition that prohibited association with members of "disruptive groups," holding that "disruptive groups" was a broad category that included political activists, union members on strike, and sports fans, and that a restriction on associating with such individuals was not reasonably related to the goals of deterrence, protection of the public or rehabilitation. 510 F.3d at 867. In *Napulou*, we invalidated a condition that prohibited the defendant from associating with people who had past misdemeanor convictions, holding that a misdemeanor encompassed "a wide range

of minor offenses" and persons with past misdemeanor convictions "might currently be law-abiding," and therefore the restriction "is not reasonably related to the risk that [the defendant] will reoffend." 593 F.3d at 1045-46. Finally, in *Johnson*, we invalidated a part of a condition that prohibited association with persons who associated with gang members, holding that because "it encompasses not only those who are involved in the gang's criminal activities, but also those who may have only a social connection to an individual gang member," the condition was not related to the goals of supervised release. 626 F.3d at 1091. The conditions here are similarly overbroad and thus not sufficiently limited to achieving the goals of deterrence, protection of the public or rehabilitation.

Part 3 of special condition 9 orders that Wolf Child shall not "date or socialize with anybody who has children under the age of 18" without prior written approval from his probation officer.[9] The category of people covered by this condition

---

[9]At first glance the terms "date" and "socialize" in part 3 of special condition 9 might appear impermissibly vague. "A defendant has a . . . due process right to conditions of supervised release that are sufficiently clear to inform him of what conduct will result in his being returned to prison." *United States v. Vega*, 545 F.3d 743, 749 (9th Cir. 2008) (internal quotation marks and citation omitted). As we have done with conditions of supervised release ordering that a defendant not "associate" with a particular group, however, if called upon to do so we would limit the ordinary definitions of "date" and "socialize" in order "to avoid [their] potentially vague outer boundaries." *United States v. King*, 608 F.3d 1122, 1128 (9th Cir. 2010). First, consistent with the "well-established jurisprudence under which we presume prohibited criminal acts require an element of mens rea," *Vega*, 545 F.3d at 750, an order that Wolf Child not "date" or "socialize" with anyone who has children under the age of 18 should be interpreted to prohibit only *knowing* interactions with individuals that Wolf Child *knows* fit this category. Second, we would interpret "date" and "socialize" to mean more than incidental contacts. *Soltero*, 510 F.3d at 866. Because Wolf Child cannot be penalized for incidental contacts or for dating or socializing with persons he does not know have children under the age of 18, part 3 of special condition 9 is not impermissibly vague. *See id.* We therefore limit our analysis in this section to the question of overbreadth.

with whom Wolf Child is prohibited from establishing social relationships is enormous. Probably more than half the people in the United States would be on the "do not associate" list. *See* U.S. Census Bureau, *Statistical Abstract of the United States* (2012)[10] (45% of family households have children under the age of 18). The prohibited group includes people close to Wolf Child, such as family members, friends, and neighbors who might have children. It would also include a boss or coworker, a sponsor in a support group, or a spiritual leader. The number of people with whom Wolf Child might socialize, knowing them to have children under the age of 18, is indeed vast. For the 10 years of his supervised release, Wolf Child would be required to obtain prior written approval from his probation officer before, for instance, having dinner with N.N. on a special occasion, or meeting a close family member or friend for coffee, or going to an AA meeting or a tribal function with others seeking to improve their own lives or their tribe's social conditions generally; he might even find himself prohibited from joining his coworkers in the lunchroom or at a social activity sponsored by his employer. It is hard to imagine how Wolf Child would be able to develop friendships, maintain meaningful relationships with others, remain employed, or in any way lead a normal life during the 10 years of his supervised release were he to abide by part 3. The breadth of that part is also troubling given that it was imposed without any evidence that Wolf Child has ever used a relationship with an adult to gain access to the adult's child.

We are also concerned, albeit slightly less so, by the breadth of part 1 of special condition 9, in that it prohibits Wolf Child from being "in the company of any child under the age of 18" without prior written approval of a probation officer. This portion of special condition 9 effectively prohibits Wolf Child from acting as a responsible father to his own daughters. It requires him to obtain written permission before

---

[10]*Available at* http://www.census.gov/compendia/statab/2012/tables/12s0064.pdf (last viewed Aug. 22, 2012).

taking his daughter to a pediatrician; or meeting one of his daughter's boyfriends before allowing her to go on a date with him; or taking his children to places of worship or other tribal functions, or to family gatherings, or other social affairs. It prevents him from being in the company of any *male* child under the age of 18 (without prior approval from his probation officer), including his nephews or cousins, although there is no evidence whatsoever that Wolf Child has any sexual interest in young boys or indeed males of any age. The district court seems not to have considered the possibility that less restrictive limitations with more relevant and narrowly limited conditions might have alleviated some of its concerns. As we held in *Napulou*, *Soltero*, and *Johnson*, we cannot comprehend how such broad prohibitions, encompassing so many people and circumstances without any narrowing provisions, are reasonably limited to the goals of deterrence, protection of the public, or rehabilitation. These broad conditions entail a greater deprivation of liberty than is necessary to achieve those goals.

Our holding that parts 1 and 3 of special condition 9 are overbroad does not unduly bind the district court's hands; the district court should still be able to devise reasonable conditions that address its concerns that Wolf Child not be in the company of unsupervised young women in circumstances that might lead to or make it possible for him to engage in improper sexual conduct with them. Thus, on remand, if the district court concludes that, notwithstanding the provisions of part 2 of special condition 9 and special conditions 1-4, additional reasonable restrictions similar to those contained in parts 1 and 3 are warranted, it must carefully examine what more narrowly circumscribed conditions would be reasonably related to the statutory purposes of deterrence, protecting the public, and rehabilitation while restricting Wolf Child's liberty only so far as is reasonably necessary. *See Soltero*, 510 F.3d at 866; 18 U.S.C. § 3583(d).

**[16]** We do not mean to suggest that upon remand the district judge should impose revised or amended versions of

parts 1 and 3 of special condition 9 or that any such new conditions would be necessary in order to meet the objectives of deterrence, protection of the public, and rehabilitation. Rather, we remand parts 1 and 3 of special condition 9 so that the district judge may consider in his discretion whether he is persuaded that similar conditions are still required given that part 2 of that special condition and special conditions 1-4 remain in effect, and if so to devise provisions that do not infringe on Wolf Child's particularly significant liberty interests any more than reasonably necessary to meet these statutory goals. We reiterate that the district court should consider the breadth of any such limitations and weigh their effect upon Wolf Child's life during his 10 years of supervised release following his seven year sentence of imprisonment.

## IV.

**[17]** Finally, Wolf Child requests that we reassign this case to a different district judge on remand. We remand to a different judge only in unusual circumstances or when required to preserve the interests of justice. *United States v. Quach*, 302 F.3d 1096 (9th Cir. 2002). When making this determination we consider:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving appearance of fairness.

*Id.* (internal citation omitted).

**[18]** Here, in light of the fact that we have made it clear that parts 1 and 3 of special condition 9 do not apply to Wolf

Child's relationship with his own children and fiancée and that we remand only to cure the remaining overbreadth problems with those parts of the special condition if the district judge concludes that following Wolf Child's seven year term of imprisonment a narrower version of the vacated parts is still necessary in addition to the restrictions already contained in part 2 of special condition 9 and special conditions 1-4, we do not believe that the test for reassignment has been met. Although the district judge erred in making remarks expressing the view that Wolf Child categorically presented a danger to all children, including his own daughters, we believe our opinion gives sufficient guidance that, should he determine that it is necessary to impose new conditions relating to Wolf Child's being in the company of other minors, he will impose only suitably narrow conditions that will comply with the applicable legal requirements set forth above.

## CONCLUSION

We hold that because the fundamental right to familial association is a particularly significant liberty interest, the district court was required to follow enhanced procedural requirements before imposing parts 1 and 3 of special condition 9. Because the district court did not undertake an individualized review of Wolf Child's relationship with his daughters and fiancée and did not make explicit findings, supported by evidence in the record, that these conditions were necessary for deterrence, protection of the public and rehabilitation, and involved no greater deprivation of Wolf Child's liberty than necessary, it committed procedural error. Moreover, because the record contains no evidence supporting any such limitations on Wold Child's fundamental liberty interest in residing with and socializing with his intimate family members, we hold that the imposition of parts 1 and 3 of special condition 9, as applied to Wolf Child's association with his daughters and fiancée, was substantively unreasonable and may not be re-imposed upon remand. Finally, in light of their general overbreadth, we also vacate parts 1 and 3 of special condition

9 and remand to the district court to consider whether it still concludes that it is necessary to impose similar but more narrowly drawn restrictions. Should the district judge decide to impose such narrowly drawn restrictions they must be reasonably related to the statutory goals of supervised release and involve no greater deprivation of Wolf Child's liberty than reasonably necessary to accomplish those goals given the facts, circumstances, and legal requirements set forth in this opinion.

**VACATED AND REMANDED.**