**NOT FOR PUBLICATION**
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**FILED**

MAY 30 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.   22-10170 |
| Plaintiff-Appellee, | D.C. No. 3:18-cr-08252-SPL-1 |
| v. | |
| NATHAN BROOKS MANUELITO, | MEMORANDUM* |
| Defendant-Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.   22-10171 |
| Plaintiff-Appellee, | D.C. No. 3:09-cr-08073-SPL-1 |
| v. | |
| NATHAN BROOKS MANUELITO, | |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Arizona
Steven Paul Logan, District Judge, Presiding

Argued and Submitted May 15, 2024
Phoenix, Arizona

Before:  GRABER, DESAI, and DE ALBA, Circuit Judges.
Partial dissent by Judge GRABER.

---

   *   This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Nathan Manuelito appeals his convictions. He also challenges two aspects of his sentence: the special condition of supervised release prohibiting any contact with his daughter and the 24-month sentence for revocation of supervised release.

Manuelito was indicted on three counts of assault, one count of burglary, and one count of kidnapping after two domestic violence incidents involving his girlfriend at the time, S.A., in 2018. During the first incident, he beat, choked, and dragged S.A. around the house by her hair. Two days later, he kicked in S.A.'s door while she attempted to prevent him from entering her home and, upon entering, shoved S.A. into a wall. S.A. did not seek medical treatment immediately after the incidents. She visited the emergency room two days after the second incident and told hospital staff, among other things, that she was "requested by [the] FBI to come into [the] ER for documentation." The doctor and nurse who treated S.A. at the emergency room testified to S.A.'s statements in the medical records recounting the assaults, and the district court admitted the testimony and exhibits over Manuelito's objection.

The jury convicted Manuelito on three counts of assault and acquitted him on the burglary and kidnapping charges. The district court sentenced Manuelito to consecutive sentences of 96 months for the assault case and 24 months for violation of supervised release in a prior case. The district court also imposed a special "no-contact" condition prohibiting Manuelito from having contact with S.A. and her

children, including Manuelito's biological daughter, A.A.

We have jurisdiction under 28 U.S.C. § 1291. We review a district court's evidentiary rulings for an abuse of discretion. *United States v. Latu*, 46 F.4th 1175, 1179 (9th Cir. 2022). When a defendant fails to object at sentencing, the court reviews a challenge to the sentence for plain error. *United States v. Johnson*, 626 F.3d 1085, 1088–89 (9th Cir. 2010). We affirm in part, and vacate and remand in part.

1.      Manuelito argues that the district court abused its discretion by admitting S.A.'s statements in her emergency room records under the medical statements hearsay exception. Fed. R. Evid. 803(4). If the court concludes a district court wrongly admitted hearsay evidence, it reviews for harmless error. *United States v. Olano*, 62 F.3d 1180, 1189 (9th Cir. 1995). We affirm the conviction because, even assuming the district court abused its discretion by admitting S.A.'s medical record statements, any error was harmless.

The government has the burden to show an error was harmless by a preponderance of the evidence. *United States v. Gonzalez-Flores*, 418 F.3d 1093, 1099 & n.3 (9th Cir. 2005). It has met its burden for several reasons. First, S.A. testified to—and was cross-examined on—the same version of events included in the medical record statements. *See United States v. Payne*, 944 F.2d 1458, 1473 (9th Cir. 1991) (holding that erroneously admitted hearsay was harmless because the

3

content of the statements was "brought out in a number of other ways," including the declarant's testimony). Second, the government introduced other evidence produced at the time of the incidents to help corroborate S.A.'s testimony, such as a bodycam video from shortly after the second incident and photos of S.A.'s injuries consistent with her testimony. And third, the government did not rely on S.A.'s statements in the medical records to argue that she was more credible. It is thus more likely than not that the statements did not have a "substantial and injurious effect or influence in determining the jury's verdict." *United States v. Bruce*, 394 F.3d 1215, 1229 (9th Cir. 2005) (emphasis omitted) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

2. Manuelito argues that the district court plainly erred by entering a no-contact condition relating to his daughter, A.A. To prevail on plain error review, Manuelito must show (1) error, (2) that was plain, (3) that affected his substantial rights, and (4) seriously affected the "fairness, integrity[,] or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732 (1993) (quoting *United States v. Young*, 470 U.S. 1, 15 (1985)). Manuelito satisfies all prongs of plain error review on this claim.

The district court erred by failing to place specific findings on the record to justify the no-contact condition. When, as here, a supervised release condition implicates a "particularly significant liberty interest," *United States v. Wolf Child*

4

requires the district court to "'undertake an individualized review' on the record of the relationship between the defendant and the family member at issue," and explain (1) why the condition provision is necessary to accomplish one or more of the supervised release goals, and (2) why the condition is no more restrictive than reasonably necessary to accomplish those goals.[1] 699 F.3d 1082, 1090 (9th Cir. 2012). *Wolf Child* is clear that the district court cannot "rely on broad generalities," and must analyze the relationship, the supervised release condition, and its necessity for accomplishing specific sentencing goals. *Id.* at 1094.

The district court failed to make the necessary findings. It read a letter from A.A. at the sentencing hearing and referenced an alleged restraining order from the tribal court. But the district court did not analyze the relationship between Manuelito and A.A., it did not make clear whether or how the no-contact condition is necessary to accomplish the supervised release goals, and it did not consider whether the condition is no more restrictive than reasonably necessary to accomplish those goals. In fact, the district court did not summarize statements from earlier at the hearing or

---

[1] We decline to interpret Manuelito's statement at sentencing, "I relinquish my parental rights," as a waiver of the right *Wolf Child* protects. In context, the statement appears to have been made erroneously, and it contradicts Manuelito's other statements that he hopes to take care of his domestic matters in the tribal courts and hopes his daughter will "come around." In any event, the government waived any waiver by failing to raise the issue and by arguing that Manuelito's claim should fail under plain error review. *See Norwood v. Vance*, 591 F.3d 1062, 1068 (9th Cir. 2010).

reference any particular analysis before summarily imposing its no-contact condition at the conclusion of the hearing.[2] Because *Wolf Child's* procedural requirements are not subject to reasonable dispute—indeed, the government alerted the court to the *Wolf Child* standard at sentencing—the district court's error was plain. *Puckett v. United States*, 556 U.S. 129, 135 (2009) (holding an error is plain when it is "clear or obvious, rather than subject to reasonable dispute").

The error affected Manuelito's substantial rights and the fairness of the proceedings. If the district court had reviewed the alleged restraining order, analyzed the sentencing goals, and assessed whether a narrower condition could achieve those goals, it might have, at the very least, imposed a less restrictive condition. *See United States v. Bautista*, 989 F.3d 698, 702 (9th Cir. 2021) (explaining that an error affects substantial rights when there is "a reasonable probability that [the defendant] would have received a different sentence if the district court had not erred"); *see United States v. Perazza-Mercado*, 553 F.3d 65, 78 (1st Cir. 2009) ("[T]here is a reasonable

---

[2] Contrary to the dissent's assertion, our holding neither elevates form over substance, nor does it require the district court to use "magic words" when imposing a non-standard condition that restricts a significant liberty interest. The record is void of any indication that the district court assessed the necessity and restrictiveness of the condition. And the dissent's efforts to cobble together a justification for the condition is no substitute for *Wolf Child's* requirement that the district court conduct the necessary inquiry to ensure a reasoned decision. *See* 699 F.3d at 1090 (contrasting conditions subject to the heightened procedural requirements with typical conditions, in which "the district court need not state . . . the reasons for imposing each condition . . . if the reasoning is apparent from the record" (emphasis omitted)).

6

probability that the court might not have imposed the prohibition if it had fulfilled its obligation to explain the basis for the condition or at least made sure that the record illuminated the basis for the condition."). For the same reasons, the court's summary imposition of the condition affected the fairness of the proceeding. *See United States v. Castillo-Casiano*, 198 F.3d 787, 792 (9th Cir. 1999) (noting that "it is easy to see why prejudicial sentencing errors undermine the 'fairness, integrity, and public reputation of judicial proceedings'" because such errors impose a harsher sentence on the defendant than might have been imposed absent the error).

Because the district court plainly erred by failing to comply with *Wolf Child*, we vacate Special Condition 7 insofar as it relates to A.A. and remand for further proceedings. On remand, the district court must explain its reasons for imposing this condition in light of *Wolf Child* and if it cannot, it must narrow the condition appropriately. *Wolf Child*, 699 F.3d at 1103.

3.      Lastly, Manuelito contends that the district court plainly erred by using the criminal history calculation from his 2010 Presentence Investigation Report when sentencing him in his supervised release case. Manuelito does not satisfy even the error prong of plain error review. Manuelito argues that the 2010 criminal history calculation was incorrect because later case law has clarified the underlying crimes do not constitute crimes of violence. But the sentencing guidelines state that the district court must use the initial criminal history calculation at a revocation

proceeding. U.S. Sent'g Guidelines Manual § 7B1.4 cmt. n.1 ("The criminal history category to be used in determining the applicable range of imprisonment in the Revocation Table is the category determined at the time the defendant originally was sentenced."). Defendants thus cannot use a revocation proceeding to challenge the initial career offender designation. *See United States v. Castro-Verdugo*, 750 F.3d 1065, 1068 (9th Cir. 2014) ("An appeal challenging a probation revocation proceeding is not the proper avenue through which to attack the validity of the original sentence." (quoting *United States v. Gerace*, 997 F.2d 1293, 1295 (9th Cir. 1993)).

**AFFIRMED in part, VACATED in part, and REMANDED.**

United States v. Manuelito, Nos. 22-10170, 22-10171

GRABER, Circuit Judge, dissenting in part:

I concur in the disposition with respect to the rulings on hearsay and the calculation of criminal history. But I respectfully dissent from the holding that the district court plainly erred by entering a no-contact condition relating to Defendant's daughter, A.A.

First, it is clear that the court was aware of its obligations under United States v. Wolf Child, 699 F.3d 1082 (9th Cir. 2012), because counsel cited it and discussed its application.

Second, the court did make specific findings on the record in support of the no-contact condition. In the unusual circumstances of this case, the disposition elevates form over substance by requiring a do-over. The district court relied on three things.

(1) Defendant already was subject to "a lifetime restraining order based on the violence that [he had] exhibited against [the] mother of [his] child." This fact alone supports the condition because Defendant already is legally barred from having any contact with A.A. for the rest of his life. In other words, Defendant cannot meet the plain-error requirement of an effect on his substantial rights. See United States v. Olano, 507 U.S. 725, 732 (1993) (stating that, to prevail on plain error review, a defendant must show that the alleged error affected his substantial

rights), <u>superseded in part on other grounds by</u> Fed. R. Crim. P. 24(c).  Defendant already had no right to contact A.A. because of the pre-existing court order, so a lesser condition in this case would have been meaningless in practical terms.  (2) The court next cited "the violent nature of the instant offense."  (3)  Finally, the court relied on what the victim and A.A "articulated to the Court."  The court was referring in part to a letter from 12-year-old A.A., which was read into the record, in which she detailed the traumas that Defendant caused her, described suicidal feelings, and wrote that, if Defendant got out of jail, "don't come looking for me." Given those findings, even if the first finding is not dispositive, the absence of explicit "magic words" tying these three reasons to the no-contact condition is not plain error, because the connection is obvious.

For those reasons, I would affirm in full.