**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Thomas Luke GUAGLIARDO,**
**Defendant–Appellant.**

**No. 01–50066.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 17, 2001

Filed Jan. 17, 2002

Maria A. Stratton, Federal Public Defender, James H. Locklin, Deputy Federal Public Defender, Los Angeles, California, for the defendant-appellant.

James S. Gordon, United States Attorney, Ronald L. Cheng, Assistant United States Attorney, Curtis A. Kin, Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellee.

Before: BROWNING, FERNANDEZ, and FISHER, Circuit Judges.

PER CURIAM Opinion; Partial Concurrence and Partial Dissent by Judge FERNANDEZ

PER CURIAM:

Thomas L. Guagliardo challenges his conviction for possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B), and three conditions attached to his supervised release. We affirm the conviction but remand for resentencing.

## I.

On July 1, 1997, Guagliardo "conversed" in an Internet chat room with an undercover police detective. Guagliardo claimed to have a collection of 7,500 images and 105 movies of pre-teen child pornography. Later, Guagliardo met with another undercover officer and gave him three computer disks containing pornographic images of preadolescent girls.

Guagliardo was charged with one count of violating 18 U.S.C. § 2252A(a)(5)(B), which at that time made it a crime to

knowingly possess[] any book, magazine, periodical, film, videotape, computer disk, or any other material that contains 3 or more images of child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer.[1]

Guagliardo was convicted after a bench trial. He was sentenced to 15 months' imprisonment followed by three years of supervised release.

## II.

Guagliardo argues that there was insufficient evidence of a connection to interstate or foreign commerce to satisfy the statutory requirement. Although there may have been insufficient evidence that his images had been "transported" in interstate commerce, we affirm the conviction because Guagliardo "produced" the images with materials from interstate commerce when he copied them onto computer disks.

---

1. Guagliardo was convicted under the 1996 version of the statute. A 1998 amendment replaced "3 or more images" with the phrase "an image."

The government proved that Guagliardo copied his images onto computer disks that had been manufactured abroad.[2] Guagliardo, however, compares a computer disk to an empty filing cabinet that passively stores information, and thus argues that the disks did not "produce" the images. The analogy, however, is strained. When the file containing the image is copied onto a disk, the original is left intact and a new copy of the image is created, so the process "produces" an image. *See United States v. Lacy*, 119 F.3d 742 (9th Cir.1997) (holding that images were "produced" when they were downloaded onto a computer); *see also United States v. Angle*, 234 F.3d 326, 341 (7th Cir.2000) (holding that visual depictions "are 'produced' when computer equipment, including computer diskettes, are used to copy the depictions onto the diskettes"), *cert. denied*, 533 U.S. 932, 121 S.Ct. 2556, 150 L.Ed.2d 722 (2001).[3] Thus, Guagliardo "produced" images of child pornography with materials from foreign commerce when he copied the images onto the disks.

## III.

▪ To prove that Guagliardo's images were of actual children, rather than computer-edited images of adults, *Free Speech Coalition v. Reno*, 198 F.3d 1083 (9th Cir. 1999), *cert. granted*, 531 U.S. 1124, 121 S.Ct. 876, 148 L.Ed.2d 788 (2001), the government introduced evidence that Guagliardo's images had been published in magazines dating from the 1970s and 1980s, before computer "morphing" technology was available. A government witness, William Siebert, testified that he had worked as a mail inspector for the Customs Service during the mid–1980s and that he had personally encountered magazines that contained copies of Guagliardo's images. He also stated that he might have written investigative reports about those magazines. The district court denied Guagliardo's request under the Jencks Act to require the government to produce those reports.

We review for abuse of discretion a district court's denial of a discovery motion made pursuant to the Jencks Act. *See United States v. Nash*, 115 F.3d 1431, 1440 (9th Cir.1997). We need not decide whether the district court abused its discretion, however, because any error would be harmless. *See United States v. Brumel–Alvarez*, 991 F.2d 1452, 1456 (9th Cir. 1992). Independent of Siebert's testimony, the district court also found that a

**2.** A witness for the Iomega Corporation, the manufacturer of Guagliardo's disks, testified that all of its disks were manufactured abroad in Belgium, Taiwan or Malaysia. Guagliardo disputes the admission of evidence that his particular disks had been manufactured in Taiwan, but conceded at oral argument that his disks must have been produced at one of these three overseas locations.

Also, the government could not prove directly that Guagliardo had copied the images from *his personal computer* because the computer was excluded as the result of an illegal search. In a recorded telephone conversation, however, Guagliardo stated that he had obtained the images by downloading them from the Internet. This was sufficient to support the court's finding that Guagliardo had copied the images onto the disks given to the undercover officer.

**3.** As Guagliardo does not seriously dispute that new copies of the files were created in the process of saving the images onto the disks, we reject his argument that the government was required to introduce "technical evidence" about how computer disks work. *Cf. United States v. Hilton*, 257 F.3d 50, 55 (1st Cir.2001) (holding that government was not required to introduce technical evidence about how a computer modem functions). Guagliardo's disks were Zip disks, a proprietary brand of removable disks produced by the Iomega Corporation. As Guagliardo acknowledges, Zip disks work like ordinary floppy disks, but have the capacity to store greater amounts of data.

sufficient number of the magazines bore copyright dates from the 1970s, which proved that they had been in circulation prior to the development of morphing technology. Consequently, even if Seibert's reports were available and somehow discredited his factual testimony, there would be sufficient independent evidence to sustain the judgment.

## IV.

■■■ Finally, Guagliardo disputes three conditions attached to his supervised release. First, he challenges a condition that he not possess "any pornography," including legal adult pornography. In *United States v. Bee*, 162 F.3d 1232 (9th Cir.1998), we recognized that a probationer does not have an unqualified First Amendment right to "sexually stimulating or sexually oriented materials." A probationer, however, has a separate due process right to conditions of supervised release that are sufficiently clear to inform him of what conduct will result in his being returned to prison. *See Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) ("we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly"); *United States v. Schave*, 186 F.3d 839, 843 (7th Cir.1999).

As the Third Circuit recognized in *United States v. Loy*, 237 F.3d 251, 263 (3d Cir.2001), a probationer cannot reasonably understand what is encompassed by a blanket prohibition on "pornography." The term itself is entirely subjective; unlike "obscenity," for example, it lacks any recognized legal definition. The district court here could not itself define the term, stating only that "The Court won't have any trouble defining it if [Guagliardo] violates it." This after-the-fact definition, however, leaves Guagliardo in the untena-ble position of "discover[ing] the meaning of his supervised release condition only under continual threat of reimprisonment, in sequential hearings before the court." *Loy*, 237 F.3d at 258.

The government asserts that any vagueness is cured by the probation officer's authority to interpret the restriction. This delegation, however, creates "a real danger that the prohibition on pornography may ultimately translate to a prohibition on whatever the officer personally finds titillating." *Id.* at 266. A probation officer could well interpret the term more strictly than intended by the court or understood by Guagliardo. In *Farrell v. Burke*, No. 97 Civ. 5708, 1998 WL 751695 (S.D.N.Y. Oct. 28, 1998), for example, the parolee had been returned to prison for possessing two books of non-obscene gay erotica and a periodical that contained "satirical articles on gay political activity, art and culture"— materials that the parolee did not consider pornographic. The parole officer, however, had interpreted the prohibition on "pornography" to include any nude depiction whatsoever, whether "Playboy Magazine or a photograph of Michelangelo's sculpture, David." *Id.* at *6.

Reasonable minds can differ greatly about what is encompassed by "pornography." Given this inherent vagueness, Guagliardo cannot determine how broadly his condition will extend. Further, we cannot determine whether the condition is otherwise reasonable under 18 U.S.C. § 3583(d). We remand for the district court to impose a condition with greater specificity.

■■■ Second, Guagliardo challenges a condition that he not reside in "close proximity" to places frequented by children. In *Bee*, 162 F.3d at 1235, we upheld a condition that the defendant not "loiter within 100 feet" of areas frequented by children. Guagliardo's condition, however, is vague because it leaves "close proximity" undefined. We remand for the court to specify

a precise distance limitation for Guagliardo's residency restriction.

Third, he argues that a condition that requires him to submit to any search by law enforcement or probation officers is overbroad under *United States v. Consuelo–Gonzalez*, 521 F.2d 259 (9th Cir.1975) (en banc). In *United States v. Knights*, 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001), however, the Supreme Court recently affirmed the validity of a search pursuant to a probation term that authorized a warrantless search at any time "by any probation officer or law enforcement officer," as long as the search was supported by reasonable suspicion. Consequently, we affirm this condition.

## CONCLUSION

For the foregoing reasons, we AFFIRM the conviction but REMAND for resentencing.

FERNANDEZ, Circuit Judge, Concurring and Dissenting:

I concur in the determination that Guagliardo was properly convicted. However, I dissent from the determination that certain of the supervised release terms are improper.

First, although Guagliardo asserts that a prohibition on his possession, use, etc., of pornography is overly broad, it seems to me that we foreclosed that argument when we held that a prohibition on possession of "sexually stimulating" material was a proper condition of supervised release. *See United States v. Bee*, 162 F.3d 1232, 1234–35 (9th Cir.1998). While the attack there was on the basis of the First Amendment and on a lack of reasonable relationship to rehabilitation, we could hardly have turned the attack aside if we found the condition overly broad or unintelligible. "Sexually stimulating" is no narrower than "pornography," and may well be broader.

Second, the proximity of residence requirement is not too broad at all because Guagliardo could not be trapped into a violation of his supervised release terms. His residence must be approved by the probation officer in the first place, and it is plain that he could not be in violation of the terms if he obtained that approval, as he is required to do. In many ways, the term is less restrictive than one which would set a certain rigid number of feet. It will allow the officer to both reasonably accommodate Guagliardo and protect young children. Leaving some definition up to the probation officer is not error. *See United States v. Tham*, 884 F.2d 1262, 1265 n. 2 (9th Cir.1989). Should the probation officer go too far, the district court can correct that in due course. *See United States v. Romero*, 676 F.2d 406, 407 (9th Cir.1982).

Finally, I agree that the search term is proper, if not read and implemented literally. However, some care will be required in its implementation. It indicates that a search may take place "with or without reasonable or probable cause." I am not at all certain that a search without any reasonable cause is necessarily proper,[1] and the Supreme Court has recently declined to address that question. *See United States v. Knights*, 534 U.S. 112, —— n. 6, 122 S.Ct. 587, 592 n. 6, 151 L.Ed.2d 497, —— n. 6 (2001).[2]

Thus, I respectfully concur in part and dissent in part.

---

**1.** *See Griffin v. Wisconsin*, 483 U.S. 868, 873, 107 S.Ct. 3164, 3168, 97 L.Ed.2d 709 (1987).

**2.** In *Knights*, as here, the search term provided for a search with or without reasonable cause.