**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | No. 13-50101 |
| v. | D.C. No. 3:95-cr-01122-LAB-1 |
| DAVID P. GNIRKE, *Defendant-Appellant*. | OPINION |

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued and Submitted
April 10, 2014—Pasadena, California

Filed January 2, 2015

Before: Sidney R. Thomas, Chief Judge, and Milan D.
Smith, Jr. and Morgan Christen, Circuit Judges.

Opinion by Judge Christen;
Concurrence by Judge Milan D. Smith, Jr.

## SUMMARY[*]

### Criminal Law

The panel affirmed a special condition of supervised release prohibiting the defendant from possessing depictions of "sexually explicit conduct" involving children or adults and from patronizing any place where such depictions are available.

The panel held that the record supports the district court's conclusion that the condition is generally necessary to achieve the goals of supervised release under 18 U.S.C. § 3583, but it does not support the restriction of the defendant's access to non-pornographic depictions of adults – speech that is protected by the First Amendment. The panel therefore construed the condition to apply: (1) to any materials with depictions of "sexually explicit conduct" involving children, as defined by 18 U.S.C. § 2256(2), and (2) to any materials with depictions of "sexually explicit conduct" involving adults, defined as explicit sexually stimulating depictions of adult sexual conduct that are deemed inappropriate by the defendant's probation officer. The panel wrote that the defendant may not possess such materials, nor may he patronize any place where such materials or entertainment are available.

Concurring in the judgment, Judge M. Smith agreed with the majority that the district court did not abuse its discretion in imposing the condition; he disagreed that the panel must –

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

or even can – reach that conclusion by construing the condition to say something that it plainly does not say.

## COUNSEL

John Charles Ellis, Jr. (argued), Amy Frances Kimpel, and Harini P. Raghupathi, Federal Defenders of San Diego, San Diego, California, for Defendant-Appellant.

Charlotte E. Kaiser (argued) and Bruce R. Castetter, Office of the United States Attorney, San Diego, California, for Plaintiff-Appellee.

## OPINION

CHRISTEN, Circuit Judge:

This case presents a potential conflict between the statutory purposes of supervised release and a defendant's First Amendment rights. David Gnirke appeals a special condition of supervised release prohibiting him from possessing depictions of "sexually explicit conduct" involving children or adults and from patronizing any place where such depictions are available. The record in this case supports the district court's conclusion that the condition is generally necessary to achieve the goals of supervised release under 18 U.S.C. § 3583, but it does not support the restriction of Gnirke's access to non-pornographic depictions of adults—speech that is protected by the First Amendment. Construing the condition not to apply to such materials, we affirm.

## BACKGROUND

In 1995 David Gnirke was living with his girlfriend and her three children at the U.S. Marine Corps Base at Camp Pendleton, California. One night, Gnirke's girlfriend returned home to find Gnirke icing the genital area of one of her twin babies. Gnirke explained that the baby had gotten itself caught on the top rail of the crib. Upon being taken to the hospital, medical staff noted swelling of the genital area that the staff did not find to be consistent with Gnirke's explanation. A doctor concluded that "[t]he best explanation for the penile injury is that hard suction was applied to the penis."

Gnirke was tried and convicted of aggravated criminal abuse of a child under 18 U.S.C. § 2241(c), and corporal punishment or injury of a child under California Penal Code § 273d.[1] He was sentenced to 235 months of imprisonment and five years of supervised release. The district court initially imposed several conditions of supervised release, which did not include restrictions on Gnirke's access to pornographic or sexually explicit materials.

Near the end of his term of imprisonment, two psychologists for the correctional facility's Sex Offender Management Program prepared a discharge evaluation for Gnirke. The evaluation first noted that Gnirke did not meet the criteria for civil commitment of a sexually dangerous person under 18 U.S.C. § 4248. It went on to evaluate Gnirke's relevant history and to assess his risk of reoffending.

---

[1] This was a federal crime because it occurred on the marine base. 18 U.S.C. § 13.

The evaluation contained a diagnosis of pedophilia and antisocial personality disorder. It noted a pattern of deceitfulness and "irresponsible behavior as related to treatment obligations." In particular, Gnirke had refused to participate in a sex offender treatment program while incarcerated and was found in possession of pornographic material. He also admitted to using hard drugs and alcohol while in prison—a risk factor for sexual recidivism. Based on an actuarial risk assessment tool, Gnirke's risk for sexual reoffending was assessed as "Moderate-High" (between the 81st and 90th percentile) relative to other adult male sexual offenders.

The evaluation concluded with a number of recommendations for Gnirke's supervision and treatment. One of these recommendations was that Gnirke not "view or possess anything sexually explicit or suggestive, including books, videos, magazine cut-outs, etc., especially if the content reveals child sexuality, nudity, partial nudity, or adult-child sexual contact."

Relying on the discharge evaluation, Gnirke's probation officer sought to modify the conditions of Gnirke's supervised release. Of relevance here, the probation officer recommended a special condition that Gnirke "not possess any sexually explicit material involving children and/or adults, as defined by 18 U.S.C. § 2256(2)," the federal statute criminalizing possession and distribution of child pornography. Gnirke objected to the modification of the court's conditions.

The district court held a hearing on the probation officer's proposed modifications in February 2013. At the hearing, the court acknowledged that it had received and reviewed the

parties' written arguments.  The court described the proposed condition regarding sexually explicit materials as "[to] not possess child or adult pornography."  Gnirke did not challenge the condition as applied to depictions involving children but requested that it be limited to this particular context.

The district court rejected Gnirke's argument.  The court reasoned that, with sex offenders, "one leads to the other," presumably referring to adult pornography as the "one" and child pornography as "the other."  It noted Gnirke's possession of adult pornography in prison and emphasized the need to prevent future offenses.  Overruling Gnirke's objection, the district court concluded: "I think there is a connection between adult and child pornography and the other things it leads to."  The court stated that "the underlying fear is that [access to pornography] is going to lead somebody to molest a kid."  The court therefore imposed a condition that required that Gnirke: "[n]ot possess any materials such as videos, magazines, photographs, computer images or other matter that depicts 'sexually explicit conduct' involving children and/or adults, as defined by 18 [U.S.C. §] 2256(2); and not patronize any place where such materials or entertainment are available."

Gnirke appeals, arguing this condition of supervised release was both procedurally and substantively unreasonable.

**JURISDICTION AND STANDARD OF REVIEW**

We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).  "The government bears the burden of establishing the necessity of any condition of supervised

release." *United States v. Wolf Child*, 699 F.3d 1082, 1090 (9th Cir. 2012). Where the defendant properly objected to a special condition of supervised release, we review the district court's imposition of the condition for an abuse of discretion. *Id.* at 1089. This standard incorporates "'considerable deference'" to the district court's conclusions regarding supervised release conditions. *Id.* (quoting *United States v. Weber*, 451 F.3d 552, 557 (9th Cir. 2006)). Our review is limited to whether the condition was procedurally and substantively reasonable. *Id.* at 1090. Finally, "[c]onditions affecting fundamental rights . . . are 'reviewed carefully.'" *Id.* at 1089 (quoting *United States v. Soltero*, 510 F.3d 858, 866 (9th Cir. 2007)).

## DISCUSSION

## I. The district court did not commit procedural error.

To avoid procedural error, a district court must consider the relevant statutory sentencing factors. *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc). When the court imposes a special condition of supervised release, the relevant factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," the need for the sentence to "afford adequate deterrence to criminal conduct," the need to "protect the public from further crimes of the defendant," and the rehabilitation of the defendant. 18 U.S.C. § 3553(a)(1), (2); 18 U.S.C. § 3583(d)(1). Procedural error occurs if the district court "choose[s] a sentence based on clearly erroneous facts" or "fail[s] adequately to explain the sentence selected." *Carty*, 520 F.3d at 993. A sufficient explanation "permit[s] meaningful appellate review" and "communicates that the parties' arguments have been heard, and that a reasoned

decision has been made." *Id.* at 992. We evaluate the sufficiency of the district court's explanation on a case-by-case basis. *See United States v. Daniels*, 541 F.3d 915, 921 (9th Cir. 2008).

A detailed explanation from the court is not always required; in some cases, "adequate explanation . . . may also be inferred from the [Pre-Sentence Report] or the record as a whole." *Id.* at 922 (internal quotation marks omitted). In cases implicating a "particularly significant liberty interest," however, a specific explanation from the court is necessary, and there is an additional hurdle: "'the district court must support its decision to impose the condition on the record with record evidence that the condition of supervised release sought to be imposed is *necessary* to accomplish'" the goals of supervised release and "'involves no greater deprivation of liberty than is reasonably necessary.'" *Wolf Child*, 699 F.3d at 1090 (quoting *United States v. Stoterau*, 524 F.3d 988, 1005 (9th Cir. 2008)).

### A. It is unnecessary to decide whether the condition as written implicates a "particularly significant liberty interest."

Gnirke argues that the special condition as written infringes on a particularly significant First Amendment interest by preventing him from accessing "a broad swath of modern visual media, much of it containing literary, artistic, or cultural significance." We do not take Gnirke to argue that there is a particularly significant liberty interest in accessing obscene or pornographic materials. We have already held that a defendant's free speech rights may be infringed to "effectively address [his] sexual deviance problem." *United States v. Rearden*, 349 F.3d 608, 619 (9th Cir. 2003) (internal

quotation marks omitted). And access to pornography is clearly not a liberty interest on par with such significant interests as associating with one's life partner, *see United States v. Napulou*, 593 F.3d 1041, 1047 (9th Cir. 2010), "having contact with one's children," *Wolf Child*, 699 F.3d at 1091, or "being free of unwanted antipsychotic medication," *United States v. Williams*, 356 F.3d 1045, 1055 (9th Cir. 2004). Rather, Gnirke argues that the relevant interest is in accessing other materials with significant First Amendment value—including popular non-pornographic films, television shows, and theater—that may be swept up by the condition, and in visiting places where such materials are available. We analyze the broad scope of the condition at length in considering whether it was substantively reasonable. Because we conclude that the condition should be construed to apply only to sexually explicit materials the district court described as "pornography," it is unnecessary to consider here whether the condition as written implicates a particularly significant liberty interest.

## B. The district court adequately explained its reasons for imposing the special condition.

Gnirke argues the district court failed to explain how the special condition relates to the goals of supervised release. But it is apparent from the record that the district court believed the condition was reasonably necessary, in light of "the nature and circumstances of the offense and the history and characteristics of the defendant," to "protect the public from further crimes of the defendant." *See* 18 U.S.C. § 3553(a)(1), (2); 18 U.S.C. § 3583(d)(1). The court articulated that "the underlying fear is that [access to pornography] is going to lead somebody to molest a kid." The court also reviewed the parties' written arguments.

Drawing on Gnirke's prison discharge evaluation, the government emphasized the need to prevent future sexual offenses. The district court's discussion of the condition was adequate to permit meaningful appellate review, ensure the parties' arguments were heard, and give confidence that a reasoned decision was made. *See Carty*, 520 F.3d at 992.

Gnirke also argues that no record evidence supported the restriction on materials depicting sexually explicit conduct involving adults. Because this argument is properly characterized as addressing whether the condition was substantively reasonable, we discuss it in that context.

## II. The special condition is substantively reasonable if not defined by 18 U.S.C. § 2256(2).

A district court may order a special condition of supervised release that: (1) "is reasonably related" to the crime, "the history and characteristics of the defendant," and the purposes of supervised release, including deterrence, protection of the public, and treatment of the offender, *see* 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D); (2) "involves no greater deprivation of liberty than is reasonably necessary"; and (3) "is consistent with any pertinent policy statements issued by the Sentencing Commission." 18 U.S.C. § 3583(d)(1), (d)(2), (d)(3). Because the district court "has at its disposal all of the evidence, its own impressions of a defendant, and wide latitude," we give "considerable deference to a district court's determination of the appropriate supervised release conditions" under the abuse of discretion standard. *Weber*, 451 F.3d at 557 (internal quotation marks omitted). We take into account "the totality of the circumstances presented to the district court." *United States v. Collins*, 684 F.3d 873,

887 (9th Cir. 2012) (internal quotation marks omitted). And we carefully review conditions affecting fundamental rights. *Wolf Child*, 699 F.3d at 1089.

**A.  The scope of the challenged condition.**

The district court clearly stated its intention to restrict Gnirke's access to what it referred to as "pornography." This was consistent with the Sex Offender Treatment Program psychologists' recommendation. But the condition as written restricts Gnirke's access to depictions of adult sexual conduct using a statutory definition of "sexually explicit conduct" that Congress has applied only to depictions of children. This definition encompasses much more than what is commonly understood as pornography in the context of adult sexual activity.

Under the condition imposed by the district court, Gnirke may not possess any materials depicting "sexually explicit conduct," as defined by 18 U.S.C. § 2256(2), or patronize places where such materials are available. This definition comes from a statutory chapter specifically addressing the sexual exploitation and abuse of children. Under the provision:

> "sexually explicit conduct" means actual or simulated—
>
> (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;
>
> (ii) bestiality;

(iii) masturbation;

(iv) sadistic or masochistic abuse; or

(v) lascivious exhibition of the genitals or pubic area of any person[.]

18 U.S.C. § 2256(2). Because the special condition incorporates this particular statutory definition of "sexually explicit conduct," it prevents Gnirke from possessing any materials depicting real or simulated sexual acts or "lascivious" full-frontal nudity,[2] and from going places where he knows such materials are available. Such places might include movie theaters, book stores, libraries, theaters, and large retailers and grocery stores that sell magazines or R-rated movies. The condition appropriately prevents Gnirke from entering strip clubs and X-rated video stores—but it also prevents him from setting foot inside his local Walmart, a library that loans R-rated movies, or a movie theater showing an R-rated film with a simulated sex scene (even if Gnirke enters the theater to see a different film).

We are aware that conditions of supervised release are read to "require an element of *mens rea*," and that this mitigates to some extent the danger that Gnirke's ability to patronize certain businesses will be limited. *See United States v. King*, 608 F.3d 1122, 1128 (9th Cir. 2010). But applying the standard literally, the average person will likely have actual knowledge that most places selling or renting DVDs—including local libraries—will stock materials containing depictions of adult sexual acts or lascivious

---

[2] Lascivious is defined as "tending to excite lust; lewd; indecent; obscene." Black's Law Dictionary (9th ed. 2009).

displays of nudity. The breadth of the condition poses a problem both for probation officers, who must decide what constitutes a violation, and for Gnirke, who should not be left guessing where he permissibly may go.

**B. The district court's intention to restrict Gnirke's access to "pornography" was reasonably related to the goals of supervised release.**

Gnirke argues that the special condition was not reasonably related to the goals of supervised release. He claims that "no evidence was presented that access to sexually explicit material involving adults" would negatively affect his rehabilitation or render him more likely to reoffend. Gnirke does not challenge the restriction on his access to materials depicting children.

In *United States v. Bee*, 162 F.3d 1232 (9th Cir. 1998), we affirmed a condition of supervised release that was similar—though not identical—to the condition that Gnirke challenges. Bee was convicted of sexually molesting a six-year-old girl, and, upon his release from custody, the district court imposed a condition that he "not possess any sexually stimulating or sexually oriented material as deemed inappropriate by [his] probation officer and/or treatment staff, or patronize any place where such material or entertainment is available." *Id.* at 1234 (alteration in original). We held that this condition was reasonably related to the goals of supervised release because "[t]he probation officer believed and the district court agreed that this condition was necessary to address Bee's problems with deviant sexual behavior . . . [and it was] therefore sufficiently related to the goal of 'protect[ing] the public from further crimes of the

defendant.'" *Id.* at 1235 (third alteration in original) (quoting 18 U.S.C. § 3553(a)(2)(C)).

The district court's rationale for restricting Gnirke's access to "pornography" is similarly reasonable in this case. Gnirke was convicted of a sexual offense involving a young child. While incarcerated for this crime, Gnirke refused to participate in sex offender treatment and was found in possession of pornography, among other infractions. He admitted to using hard drugs and alcohol while in prison, a factor that elevates his risk for sexual recidivism according to the discharge evaluation. Accounting for this history, the prison psychologists "place[d] [Gnirke] in the Moderate-High (between the 81st and 90th percentile) risk category [to reoffend] relative to other male sexual offenders." Given Gnirke's egregious offense, his failure to participate in sex offender treatment, and the psychologists' recommendation, we conclude the district court's intention to restrict Gnirke's access to sexually explicit materials was reasonably related to the protection of the public.

## C. The condition as written deprives Gnirke of more liberty than is reasonably necessary.

Gnirke also argues that the condition the court actually imposed "infringes more on [his] liberty than is reasonably necessary" to accomplish the goals of supervised release. *See* 18 U.S.C. § 3582(d)(2). He suggests that, in light of the significant First Amendment interests at issue, the district court should not have prohibited all depictions of adult sexual conduct, or prohibited him from "patroniz[ing] any place where such materials or entertainment are available." For the reasons explained below, we agree.

First, we acknowledge that the condition imposed on Gnirke unquestionably implicates his First Amendment right to access protected speech. *See United States v. Curtin*, 489 F.3d 935, 956, 959–60 (9th Cir. 2007) (en banc); *see also Stanley v. Georgia*, 394 U.S. 557, 565 (1969) ("If the First Amendment means anything, it means that a State has no business telling a man, sitting alone in his own house, what books he may read or what films he may watch."). We have said there is also no doubt that "a defendant's [First Amendment rights] may be abridged to effectively address [his] sexual deviance problem." *Rearden*, 349 F.3d at 619 (internal quotation marks omitted). Because a condition may not restrict more liberty than is reasonably necessary under § 3582(d)(2), the scope of the challenged condition is the focus of our analysis.

We have previously considered restrictions on sexually explicit materials as a condition of supervised release. In *Bee*, our court approved a condition that prohibited possession of "sexually oriented material as deemed inappropriate by [Bee's] probation officer." 162 F.3d at 1234. In *United States v. Guagliardo*, 278 F.3d 868 (9th Cir. 2002), our court held that a condition restricting access to "pornography" was impermissibly vague. *Id.* at 872. In Gnirke's case, the district court tied the definition of adult "sexually explicit conduct" to the statutory language in 18 U.S.C. § 2256(2), thereby encompassing virtually all materials containing depictions of adult sexual conduct. Images of adult sexual activity are ubiquitous in advertisements and a variety of mainstream media. By employing the language from a statute intended to apply only to child pornography, the plain language of Gnirke's condition includes any depiction of actual or simulated adult sexual intercourse, however fleeting or veiled, and regardless

of how insignificant it may be to the overall content of an art exhibit, play, or movie. Because the condition also prevents Gnirke from patronizing establishments where any depictions of simulated adult sexual activity are available, he could easily violate it by simply carrying on everyday activities like shopping, seeing a mainstream movie, reading a mainstream magazine, or watching television.

The government cites our decisions in *United States v. Rearden* and *United States v. Daniels*. Neither is inconsistent with the result we reach here. In *Rearden*, reviewing for plain error, we upheld "a special condition that Rearden not possess any materials depicting sexually explicit conduct as defined in 18 U.S.C. § 2256(2)" where Rearden's offense consisted of transmitting pornographic images involving sexual acts between "adult men and infant, prepubescent, and pubescent boys, as well as the display of the genitalia of boys." 349 F.3d at 612. Rearden had collaborated with "a dangerous pedophile," and the offense resulted from Rearden's "interest in extremely vile and graphic depictions of child rape and murder." *Id.* at 620. The district court determined that "limiting Rearden's possession of materials depicting sexually explicit conduct . . . furthered the goals of rehabilitating him and protecting the public." *Id.* Because we have held that the phrase "sexually explicit conduct" as defined in 18 U.S.C. § 2256(2) is neither unconstitutionally "vague nor overbroad," and given the facts of *Rearden*, we found no plain error in the restriction preventing Rearden from possessing legal adult pornography and pornographic stories. *Id*. As we have explained, Gnirke may similarly be prevented from possessing legal adult pornography.

*Daniels* concerned a prohibition on "possess[ing] any materials, including pictures, photographs, books, writings,

drawings, videos, or video games, depicting and/or describing 'sexually explicit conduct' as defined in 18 U.S.C. § 2256(2)." 541 F.3d at 927. Daniels was convicted of possession of child pornography, and he argued on appeal that the condition involved a greater deprivation of his liberty than was reasonably necessary. *Id.* Citing *Rearden*, we held that the condition was not plainly erroneous, even though Daniels was not involved with a dangerous co-defendant and his pornographic interests were less extreme than Rearden's. *Id.* at 927–28.

There are at least two important distinctions between Gnirke's case, on the one hand, and *Rearden* and *Daniels*, on the other. First, in both *Rearden* and *Daniels*, we reviewed the district court's rulings for plain error. "Under the plain error standard of review, the appellant must show that: (1) there was error; (2) the error committed was plain; (3) the error affected substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *United States v. Gonzalez-Aparicio*, 663 F.3d 419, 428 (9th Cir. 2011). An error "cannot be plain where there is no controlling authority on point and where the most closely analogous precedent leads to conflicting results." *Id.* (citation and internal quotation marks omitted). Because of the lack of controlling authority on point, any error regarding the scope of the condition in *Daniels* and *Rearden* would not have been "plain" at the time those cases were decided.

Second, neither *Rearden* nor *Daniels* involved the additional restriction found here: that Gnirke may "not patronize any place where such [sexually explicit] materials or entertainment are available." This part of Gnirke's condition vastly expands its scope. Not only may he not possess "any materials such as videos, magazines,

photographs, computer images or other matter that depicts 'sexually explicit conduct' involving children and/or adults," he is also severely restricted in where he may shop, acquire information, and view art or entertainment.

Unlike *Rearden* and *Daniels*, Gnirke did object to the portion of the condition imposed by the district court that restricts his access to depictions of conduct involving only adults. Our view is that it was within the scope of the district court's discretion to limit his access to child and adult pornography—which the district court's written order termed "sexually explicit conduct"—but the condition actually imposed sweeps too broadly by limiting Gnirke's access to *non*-pornographic depictions of "sexually explicit conduct" involving only adults, and by prohibiting him from going places where these materials or entertainment may be found.[3]

As written, the condition's burden on Gnirke's constitutional rights is potentially great. The Supreme Court recognizes that "[t]he portrayal of sex, e.g., in art, literature and scientific works, is not itself sufficient reason to deny material the constitutional protection of freedom of speech and press." *Roth v. United States*, 354 U.S. 476, 487 (1957). "[I]t is one of the vital problems of human interest and public concern." *Id.* Applied literally, the language of the condition would prevent Gnirke from viewing Oscar-winning films like *American Beauty* and *Brokeback Mountain*, television shows

---

[3] Contrary to the concurrence's suggestion, we do not conclude that the condition sweeps to broadly because we "equat[e] the district court's use of 'sexually explicit conduct' with 'pornography.'" Rather, as we have explained, we conclude the condition sweeps too broadly because it defines "sexually explicit conduct" with reference to 18 U.S.C. § 2256(2) and prohibits Gnirke from patronizing places where materials depicting such conduct may be found.

like *The Wire*, or sexually explicit works of art that appear in museums; yet such non-pornographic materials receive full protection under the First Amendment. *See Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 874 (1997). Because the condition also prevents Gnirke from patronizing places where such materials are available, the burden it imposes extends well beyond possession of what is commonly understood as "pornography" and makes it much more likely that Gnirke will unwittingly violate the condition. The government has not made any specific showing why Gnirke's access to non-pornographic depictions of adults must be restricted in order to serve the purposes of supervised release, and it is not apparent from the record; therefore, we conclude that the condition as written deprives Gnirke of more liberty than is reasonably necessary.

Our conclusion is consistent with the reasoning of our earlier cases, and with decisions from other circuits. In *United States v. Simons*, the Eighth Circuit recognized that special conditions that prohibit possession of pornographic materials "have often withstood First Amendment challenges" but nonetheless held that a condition prohibiting the defendant "from possessing any material that depicts nudity" involved a "greater deprivation of liberty than [was] reasonably necessary." 614 F.3d 475, 483, 485 (8th Cir. 2010). And the Seventh Circuit in *United States v. Siegel*, citing *Simons*, remanded for a district court to reconsider a similar condition restricting the possession of materials containing nudity. 753 F.3d 705, 712–13 (7th Cir. 2014).[4]

---

[4] The special condition here is both broader and narrower than the conditions in *Simons* and *Siegel*. It is broader because it prohibits patronage as well as possession. But its definition of "sexually explicit conduct" is narrower than the blanket definition of "nudity" in those cases.

The Seventh Circuit suggested that the prohibition be rephrased to encompass only "material that depicts nudity in a prurient or sexually arousing manner," which accords with the commonly understood definition of pornography. *Id.* at 713.**[5]**

### D.  Limitation on the special condition.

The district court intended to restrict Gnirke's access to "child and adult pornography," but by applying the definition in 18 U.S.C. § 2256(2) to depictions of *adult* sexual activity,

---

**[5]** The concurrence incorrectly suggests that our conclusion conflicts with *United States v. Mefford*, 711 F.3d 923 (8th Cir. 2013), *United States v. Deatherage*, 682 F.3d 755 (8th Cir. 2012), and *United States v. Thielemann*, 575 F.3d 265 (3d Cir. 2009). As in *Daniels* and *Rearden*, the conditions in *Deatherage* and *Thielemann* did not involve the restriction that the probationer not patronize any place where sexually explicit materials are available. *See Deatherage*, 682 F.3d at 762; *Thielemann*, 575 F.3d at 270. As we have explained, this part of Gnirke's condition vastly expands its scope.

In *Mefford*, the district court imposed the following two special conditions: (1) "Defendant shall not access, view, possess, or have under his control any pornography, including any material that depicts or alludes to sexual activity, or sexually explicit conduct as defined by 18 U.S.C. § 2256(2)"; and (2) "Defendant shall not enter any location where pornography, erotica, or adult entertainment can be obtained or viewed." *Mefford*, 711 F.3d at 926. In upholding these conditions, the Eighth Circuit explained: "The district court intended that Mefford only be prohibited from possessing or obtaining pornography . . . . The district court explained that these 'are limited restrictions that serve the purpose of [§] 3553(a) while preserving the Defendant's right to view and/or possess non-obscene material that may contain nudity.'" *Id.* at 927. In other words, the court upheld the condition because it understood it to be limited to what is commonly understood as pornography. *See id.* at 928. Here, we similarly uphold Gnirke's condition as substantively reasonable when construed as the district court intended.

the condition deprives Gnirke of more liberty than is reasonably necessary. We therefore construe the condition to apply: (1) to any materials with depictions of "sexually explicit conduct" involving children, as defined by 18 U.S.C. § 2256(2), and (2) to any materials with depictions of "sexually explicit conduct" involving adults, defined as explicit sexually stimulating depictions of adult sexual conduct that are deemed inappropriate by Gnirke's probation officer. Gnirke may not possess such materials, nor may he patronize any place where such materials or entertainment are available. *See United States v. Goddard*, 537 F.3d 1087, 1089 (9th Cir. 2008) (construing a facially broad condition more narrowly to avoid a greater deprivation of defendant's liberty than was reasonably necessary). Contrary to the concurrence's suggestion, we believe Gnirke's condition is "readily susceptible" to this limiting construction because it brings the condition in line with what the district court clearly intended.

The concurrence argues that we should remand for the district court to craft a new condition, rather than narrowing the condition on appeal. But both this court and the district court have struggled to describe a special condition of release prohibiting access to sexually explicit materials that is sufficiently clear and not overbroad. We believe it is appropriate to provide the district court with a workable alternative rather than yet another directive to "try again."

With respect to the construed condition, we recognize that, as in *Bee* and every other case involving special conditions of release, Gnirke's probation officer and the district court will have some degree of discretion to decide which materials the condition restricts. *Cf. Bee*, 162 F.3d at 1234–35 (upholding condition preventing Bee from

possessing "sexually stimulating or sexually oriented material deemed inappropriate by his probation officer and/or treatment staff" and from patronizing places where such material is available). The difficulty of defining "pornography" with any degree of precision is inherent in the nature of this condition of supervised release. Other courts have had occasion to consider how to define the terms "pornography" or "pornographic," with varying degrees of success.[6]     And we have suggested that "[t]he term

---

[6] The Supreme Court's decision in *Miller v. California* concerned obscenity but recognized that "[t]he material we are discussing in this case is more accurately defined as 'pornography' or 'pornographic material'" because that case concerned sex-related obscenity. 413 U.S. 15, 18 n.2 (1973). The Court's legal definition of sex-related obscenity was narrower than the dictionary definition it quoted for pornography: "a depiction (as in writing or painting) of licentiousness or lewdness: a portrayal of erotic behavior designed to cause sexual excitement." *Id.* Pornography is therefore a broader category than sex-related obscenity. *See Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 240 (2002) ("As a general rule, pornography can be banned only if obscene.").

Others have tried to frame more focused legal definitions of adult pornography. One influential strand of legal thought ties "pornography" to "the graphic sexually explicit subordination of women," but this definition has not found favor with courts. *See Am. Booksellers Ass'n, Inc. v. Hudnut*, 771 F.2d 323, 324–25 (7th Cir. 1985) (citing Catharine A. MacKinnon, *Pornography, Civil Rights, and Speech*, 20 Harv. C.R.-C.L. L. Rev. 1 (1985)), *aff'd*, 475 U.S. 1001 (1986). Another scholar has required depictions of actual "physical abuse" with "the purpose and effect of producing sexual arousal." Cass R. Sunstein, *Pornography and the First Amendment*, 1986 Duke L.J. 589, 592 (1986). These are attempts at a definition of legally "regulable pornography," *see id.* at 592–93, that is, pornography that lacks protection under the First Amendment. Here, we are concerned not with defining the scope of the First Amendment, but with the more prosaic and functional question of how to avert the potentially negative *effects* of pornography on an individual who has committed sexual abuse on a child.

['pornography'] itself is entirely subjective; unlike 'obscenity,' for example, it lacks any recognized legal definition." *Guagliardo*, 278 F.3d at 872.  But this does not mean that pornography lacks a recognized definition in society at large, however fuzzy its edges may be.  Black's Law Dictionary defines "pornography" as: "Material (such as writings, photographs, or movies) depicting sexual activity or erotic behavior in a way that is designed to arouse sexual excitement."  Black's Law Dictionary (9th ed. 2009); *see also* Oxford English Reference Dictionary 1128 (Rev. 2d ed. 2006) (defining pornography as "the explicit description or exhibition of sexual subjects or activity in literature, films, etc., intended to stimulate erotic rather than aesthetic or emotional feelings").  This seems to coincide with the common understanding of the term.  There may be various additions and qualifications one may wish to make, but it is evident that, at a minimum, pornography is explicit material intended to stimulate, arouse, or the like.

We have little doubt that this ordinary definition is generally what the district judge had in mind when he paraphrased the special condition as: "[t]o not possess child or adult pornography."  And we note that the exercise of discretion by Gnirke's probation officer and the district court in applying the revised condition will be subject to judicial review to the same extent as other conditions of supervised release.

## CONCLUSION

Construed in the manner discussed in the previous section, the district court's imposition of the special condition restricting Gnirke's access to sexually explicit materials is **AFFIRMED**.

M. SMITH, Circuit Judge, concurring in the judgment:

The question before the panel is whether the district court abused its discretion in revising the conditions of Gnirke's supervised release. I agree with the majority that the district court acted well within its discretion in imposing a condition that prohibits Gnirke from "possess[ing] any materials . . . that depict[] 'sexually explicit conduct' involving children and/or adults, as defined by 18 U.S.C. § 2256(2); and . . . patroniz[ing] any place where such materials or entertainment are available." However, I cannot agree that we must—or even can—reach this conclusion by construing the condition to say something that it plainly does not say. Moreover, in rewriting the challenged condition to substitute its own definition of "sexually explicit material" for the district court's undoubtedly permissible definition of the materials Gnirke is prohibited from accessing, the majority disregards the abuse of discretion standard and exceeds the scope of our authority.

For these reasons, I respectfully concur only with the judgment.

## I.   The District Court Acted Within its Discretion

The district court acted well within its discretion in prohibiting Gnirke from accessing "[material] that depicts 'sexually explicit conduct' involving children and/or adults, as defined by 18 U.S.C. § 2256(2)" and from "patroniz[ing] any place where such materials or entertainment are available." The majority impugns the validity of the condition by equating the district court's use of "sexually explicit conduct" with "pornography," a term our court has found to be unconstitutionally vague in the context of supervised

release conditions because "it lacks any recognized legal definition." *United States v. Guagliardo*, 278 F.3d 868, 872 (9th Cir. 2002). From this false premise, the majority erroneously concludes that "the condition actually imposed sweeps too broadly." But the district court did not prohibit Gnirke from possessing "pornography"; instead, it specified the materials that Gnirke cannot access, and tied the condition to the definition of "sexually explicit conduct" set forth in § 2256(2).

We review the imposition of conditions of supervised release for abuse of discretion. *United States v. Wolf Child*, 699 F.3d 1082, 1089 (9th Cir. 2012). Any special condition must be "reasonably related" to the goals of deterrence, protection of the public, and rehabilitation of the offender. 18 U.S.C. §§ 3583(d)(1), 3553(a). In addition, the conditions cannot involve any "greater deprivation of liberty than is reasonably necessary for the purposes" of supervised release. 18 U.S.C. § 3583(d)(2). "The touchstone of reasonableness is whether the record as a whole reflects rational and meaningful consideration" of the relevant factors. *United States v. Rudd*, 662 F.3d 1257, 1261 (9th Cir. 2011) (internal quotation marks omitted).

As the majority explains, Gnirke molested a twenty-month old baby who was left in his care, and was subsequently convicted of aggravated sexual abuse, in violation of 18 U.S.C. § 2241(c), and infliction of inhuman punishment on a child, in violation of 18 U.S.C. § 13 and California Penal Code § 273(d). Gnirke's sister further reports that Gnirke engaged in sexual conduct with her on at least two occasions when she was a child. And it is undisputed that Gnirke himself was a victim of sexual abuse. During his incarceration, Gnirke refused to participate in sex

offender treatment, was found in possession of pornography, failed drug treatment, was charged three times for possession of drugs or alcohol, used heroin and marijuana, and had ten instances of institutional misconduct.

In preparing Gnirke's Discharge Evaluation, the Sex Offender Treatment Program psychologist considered these factors and "placed [Gnirke] in a moderate to high (between 81st and 90th percentile) risk category to reoffend relative to other male sexual offenders." The psychologist further recommended intensive treatment focusing on "offense-specific targets . . . [to] reduce the likelihood of further sexual offending." The psychologist specified that Gnirke "should not view or possess anything sexually explicit or suggestive, including books, videos, magazine [cutouts], etc."

Following a hearing, the district court modified the conditions of Gnirke's supervised release to include a condition that prohibits Gnirke from "possess[ing] any materials . . . that depict[] 'sexually explicit conduct' involving children and/or adults, as defined by 18 U.S.C. § 2256(2); and . . . patroniz[ing] any place where such materials or entertainment are available." The record is thus clear that the district court imposed this condition out of a concern for public safety, to minimize Gnirke's likelihood of sexually violating another child, and to further Gnirke's rehabilitation.

As the majority observes, the challenged condition may prohibit Gnirke from patronizing certain establishments, and the condition reaches some forms of speech that are constitutionally protected for most people. Nevertheless, "[t]he district court has broad discretion in setting conditions of supervised release, including restrictions that infringe on

fundamental rights." *United States v. Bee*, 162 F.3d 1232, 1234 (9th Cir. 1998). Moreover, we have recognized that "[a] defendant's right to free speech may be abridged to effectively address [his] sexual deviance problem." *United States v. Rearden*, 349 F.3d 608, 619 (9th Cir. 2003) (internal quotation marks omitted).

For these reasons, we have previously upheld conditions of supervised release that are nearly identical to the condition before us. In *United States v. Daniels*, 541 F.3d 915, 927 (9th Cir. 2008), and *United States v. Rearden*, 349 F.3d at 619, we affirmed conditions of supervised release that prohibited the probationer from possessing any materials depicting or describing "sexually explicit conduct" involving children or adults as defined in 18 U.S.C. § 2256(2). In *United States v. Bee*, 162 F.3d at 1234, we upheld a condition that prohibited the probationer from "possess[ing] any sexually stimulating or sexually oriented material as deemed inappropriate by [his] probation officer and/or treatment staff, or patroniz[ing] any place where such material or entertainment is available."

The majority concludes that these prior holdings are not dispositive and that the challenged condition "sweeps too broadly." The majority reasons that we need not follow our precedent because: (1) the conditions in *Daniels*, *Rearden*, and *Bee* were reviewed for plain error, and (2) the conditions in *Daniels* and *Rearden* did not include a provision that prohibited the probationer from patronizing any place where the prohibited materials were available. The majority's conclusion is inconsistent with our case law and also contradicts that of other circuits.

Just because the conditions in *Daniels*, *Rearden*, and *Bee* were reviewed for plain error does not mean that these cases

are devoid of precedential value. The condition at issue in *Bee* restricted the probationer's access to sexually explicit materials and prohibited him from patronizing any place where such materials are available. *Id*. In affirming this condition, we did not merely hold that the district court did not commit plain error. We specifically held that the condition was substantively reasonable because "the probation officer believed and the district court agreed that this condition was necessary to address Bee's problems with deviant sexual behavior . . . [and it was] therefore sufficiently related to the goal of 'protect[ing] the public from further crimes of the defendant.'" *Id.* at 1235 (quoting 18 U.S.C. § 3553(a)(2)(C)). We subsequently reaffirmed *Bee*'s holding in *United States v. Guagliardo*, in which we explained that "a probationer does not have an unqualified First Amendment right to 'sexually stimulating or sexually oriented materials.'" 278 F.3d 868, 872 (9th Cir. 2002) (quoting *Bee*, 162 F.3d at 1232).

Our sister circuits have also affirmed substantively identical conditions. For example, in *United States v. Mefford*, the Eighth Circuit rejected an overbreadth challenge and upheld a condition of supervised release which stated that the probationer "shall not access, view, possess, or have under his control any pornography, including any material that depicts or alludes to sexual activity, or sexually explicit conduct as defined by 18 U.S.C. § 2256(2) . . . [or] enter any location where [such materials] can be obtained or viewed." 711 F.3d 923, 926–28 (8th Cir. 2013); *see also United States v. Deatherage*, 682 F.3d 755, 762 (8th Cir. 2012) (upholding a condition of supervised release which stated that the probationer "shall not purchase, possess . . . or use any media forms containing pornographic images or sexually oriented materials including . . . materials containing 'sexually explicit

conduct' as defined in 18 U.S.C. § 2256(2)"); *United States v. Thielemann*, 575 F.3d 265, 268 (3d Cir. 2009) (holding that a condition that prohibited a probationer from "possess[ing] and viewing . . . sexually explicit material, as defined in 18 U.S.C. § 2256(2)(A), does not violate the Constitution"). In each of these cases, the court reviewed for abuse of discretion, not for plain error, and each plainly held that the challenged condition was not constitutionally overbroad. *Mefford*, 711 F.3d at 926–28; *Deatherage*, 682 F.3d at 762; *Thielemann*, 575 F.3d at 268.

In light of the egregious nature of Gnirke's sexual misconduct, the psychologist's opinion that Gnirke is likely to reoffend, and the psychologist's recommendation that Gnirke "not view or possess anything sexually explicit or suggestive," the district court acted well within its discretion in imposing the challenged condition. The majority's unfounded conclusion that the condition "sweeps too broadly," is inconsistent with our case law and is also in direct conflict with decisions of our sister circuits.

## II. Rewriting the Challenged Condition is Improper

Even if the district court had erred in imposing the challenged condition—which it did not—I would refrain from rewriting the condition because it is not our role as an appellate court to craft conditions of supervised release, and doing so disregards the abuse of discretion standard and exceeds the scope of our authority.

District courts have broad discretion in fashioning conditions of supervised release. *United States v. Gementera*, 379 F.3d 596, 600 (9th Cir. 2004). On appeal, our *only* duty is to determine whether the district court abused this

discretion. *See Gall v. United States*, 552 U.S. 38, 51 (2007) ("The sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case. The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record.").

If we determine that the district court acted within its discretion in imposing a condition of supervised release, we affirm the condition. *Id.* If we determine that the district court abused its discretion, we must vacate the condition and remand to the district court with instructions that the district court impose a revised condition. *See, e.g.*, *Wolf Child*, 699 F.3d at 1102 (holding that conditions of supervised release were overbroad and remanding for the district court to "carefully examine what more narrowly circumscribed conditions would be reasonably related to the statutory purposes of [supervised release]"); *United States v. Sales*, 476 F.3d 732, 737 (9th Cir. 2007) (holding that condition of supervised release was overbroad and remanding because "the district court, in consultation with the probation officer, is better suited to the job of crafting adequate but not overly restrictive conditions of supervised release").

Here, the challenged condition plainly states that "[Gnirke shall n]ot possess any materials such as videos, magazines, photographs, computer images or other matter that depicts 'sexually explicit conduct' involving . . . adults, as defined by 18 U.S.C. § 2256(2); and [shall] not patronize any place where such materials or entertainment are available." The majority concludes that it was within the scope of the district court's discretion to limit Gnirke's access to adult pornography, but that "the condition actually imposed sweeps too broadly." Nevertheless, rather than vacating the condition

and remanding for the district court to narrow the condition's breadth, the majority rewrites the condition to substitute its own definition of "sexually explicit conduct" for the district court's plainly stated definition. In so doing, the majority exceeds the permissible scope of our review.

In order to justify rewriting the challenged condition of supervised release, the majority cites to *United States v. Goddard*, 537 F.3d 1087 (9th Cir. 2008). In that case, we reviewed several conditions of supervised release. One condition stated that the probationer "shall not add, remove, upgrade, update, re-install, repair, or otherwise modify the hardware or software on [his] computers, computer-related devices, or their peripheral equipment . . . without the prior approval of [his] Probation Officer." *Id*. at 1090 n.3. We concluded that this condition would be unworkable as a "practical matter" if it were "broadly applied," and we narrowly construed the condition not to apply to "routine or automatic" software modifications or upgrades. *Id*. at 1090–91. We further read a condition that the probationer "shall use computers/devices only within the scope of his employment" to apply only to the probationer's use of computers at work. *Id*. at 1090–91 ("[R]easonably construed in context, [the condition] means that *at work*, [the probationer] shall use computers and computer related devices only within the scope of his employment.").

As with any legal text, we may only impose a limiting construction on a condition of supervised release if it is "'readily susceptible' to such a construction." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 946 (9th Cir. 2011) (en banc) (quoting *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 884 (1997)). In *Goddard*, the plain language of the challenged conditions was

fairly susceptible to a narrow reading, and our reading neither conflicted with nor altered the conditions' plain terms. By contrast, the text of the condition before us specifically refers to "sexually explicit conduct" and it adopts the definition of "sexually explicit" found in 18 U.S.C. § 2256(2). I see no way to read the condition as having *any* alternate meaning, including the one the majority has assigned to it.

I am not aware of any precedent that permits us to redraft conditions of supervised release as we see fit. Accordingly, if the majority believes that the challenged condition is overbroad—a conclusion with which I disagree—the proper course would be to vacate the condition and remand to the district court.

## III.    Conclusion

The district court did not abuse its discretion in imposing a condition that prohibits Gnirke from "possess[ing] any materials . . . that depict[] 'sexually explicit conduct' involving children and/or adults, as defined by 18 U.S.C. § 2256(2); and . . . patroniz[ing] any place where such materials or entertainment are available." I would affirm on these grounds.

I am perplexed by the majority's decision to exceed the permissible scope of our review by rewriting a condition of supervised release that is substantively identical to those that we and our sister courts have affirmed on a number of occasions.

For these reasons, I respectfully concur only with the judgment.