Filed 6/27/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DANIEL BRAY,<br><br>    Defendant and Appellant. | H051237<br>(Santa Clara County<br> Super. Ct. No. F2201067) |

Defendant Daniel Bray pleaded no contest to possession of child pornography in violation of Penal Code section 311.11, subdivision (c)(1).[1]  The trial court granted Bray a two-year term of formal probation.  Amongst other conditions, the court prohibited Bray's use of the Internet without probation approval; dating, socializing with or forming a romantic relationship with any person who has physical custody of a minor unless approved by the probation officer; possessing pornography; and frequenting, working for, or engaging in any business where pornography is openly exhibited.  Bray objects to the first two conditions as unconstitutionally overbroad and the last two as unconstitutionally vague.  The Attorney General concedes the pornography conditions are unconstitutionally vague and the condition regarding dating and socializing is overbroad and should be modified by striking the term "socialize."  For reasons we discuss, we conclude the Internet use restriction is overbroad, as well as the restriction on dating, socializing, or forming a relationship, and they must be stricken or modified.  We also

---

[1] Subsequent undesignated statutory references are to the Penal Code.

conclude the pornography conditions must be modified.  Accordingly, we remand to the trial court.

## I.     BACKGROUND[2]

On March 29, 2022, the National Center for Missing and Exploited Children (NCMEC) received two cybertips regarding the transmission of child pornography.  An investigation was initiated, and a search warrant was obtained for Daniel Bray's residence.  The search was conducted in June 2022, and Bray's computer, two cell phones, and several electronic storage devices were seized.  The devices were forensically analyzed.  The investigator estimated that there were thousands of image and video files of child pornography involving minors as young as five years old.  Bray admitted to the investigating officer that he came into possession of child pornography "through various media platforms and through torrent web browsers, Megalinks, and private online chat rooms."  Bray stated that he originally was looking for glamour images of children for his social media photography work, which led "to a 'rabbit hole.' "  Bray confessed that he first possessed child pornography while he was in high school, that he did not actively search for it, but it was regularly accessible on chat sites, and he may have uploaded it to a Russian website.  Bray later sent an email to the investigator again admitting his possession of child pornography and what he described as an addiction to pornography.  In the email, Bray stated "that people who are online a lot and have a porn addiction tend to eventually start searching for more messed up stuff over time cause regular porn becomes stale and not as stimulating so they start looking into kinks and darker things and I know for a fact that is what happened to me."

In July of 2022, the prosecution charged Bray with one count of possession or control of any matter depicting sexual conduct of a person under 18 years of age in violation of section 311.1, subdivision (c)(1).  Bray pleaded no contest to the single

_____

[2] Because the defendant pleaded no contest, we draw the following facts from the sentencing memoranda and court records.

felony count as charged. In exchange for the plea, the parties agreed Bray would be placed on formal probation for two years, and upon successful completion of one year of probation with no new charges or violations, the prosecution would not object to reducing the charge to a misdemeanor. The parties stipulated to a factual basis for the plea.

In July of 2023, the trial court suspended imposition of sentence and granted formal probation for a period of two years, subject to the following conditions, among others[3]:

1.     You shall not knowingly access the Internet or any other online service other than chase.com through the use of a computer or other electronic device at any location, including any place of employment, without prior approval of the probation officer. You shall not knowingly possess or use any data encryption technique program.[4] (Condition 12)

2.     During the term of probation, you may not date, socialize with, or form a romantic relationship with any person who has physical custody of a minor child unless approved by the probation officer. (Condition 20)

---

[3] We observe that the language of the probation conditions imposed orally at the hearing differs slightly from the language in the written conditions attached to the minute order, although not in any material way. We have set forth the language of the conditions as stated at the hearing.

The trial court also ordered Bray to comply with other conditions relevant to the issues presented: waive his Fourth Amendment rights to permit law enforcement and probation to search all of his electronic devices and provide passwords for the electronic devices and his email accounts to permit searching of those devices; provide his email addresses; not clean or delete his Internet browsing activity, and keep at least four weeks of said browsing activity; and not knowingly enter any social networking sites unless approved by the probation department. Bray was also ordered to seek and maintain employment or participate in academic or vocational training. Bray does not challenge any of these conditions.

[4] The trial court offered to include as an exception to the condition any specific websites Bray anticipated using. At the request of Bray, the court authorized an exception to the condition for "chase.com."

3. You shall not knowingly purchase or possess pornographic or explicit material as defined by the probation officer during the term of probation. (Condition 21)

4. You shall not knowingly frequent, be employed by, or engage in any business where pornographic materials are openly exhibited. (Condition 22)

At the time of the sentencing hearing, Bray objected to conditions 12, 20, and 22. The trial court overruled Bray's objections, finding that the restrictions were for a minimal amount of time, reasonably related to the crime and nature of the offense, and would prevent conduct that might prove harmful or pose a threat to minors.

Bray timely appealed.

## II.    DISCUSSION

### A.    *Legal Principles*

"In granting probation, courts have broad discretion to impose conditions to foster rehabilitation and protect public safety pursuant to Penal Code section 1203.1." (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120.)  Although such conditions must be reasonable, courts generally follow the California Supreme Court's test set forth in *People v. Lent* (1975) 15 Cal.3d 481, 486 (*Lent*), under which " '[a] condition of probation will not be held invalid unless it "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality...." [Citation.]' [Citation.]  This test is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term. [Citations.]" (*People v. Olguin* (2008) 45 Cal.4th 375, 379.)  Bray does not assert any of the challenged conditions fail the *Lent* test.  But a condition may still be invalid if unconstitutionally overbroad or vague. (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1153 (*E.O.*) ["A probation condition . . . may be challenged as unconstitutionally vague or overbroad."].)

4

A condition that impinges on a constitutional right " 'may be supplemented by a second level of scrutiny . . . ; such conditions must be carefully tailored, " 'reasonably related to the compelling state interest in reformation and rehabilitation....' " ' [Citation.]" (*People v. O'Neil* (2008) 165 Cal.App.4th 1351, 1356 (*O'Neil*); *In re Sheena K.* (2007) 40 Cal.4th 875, 890 (*Sheena*) ["A probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad."].)  "The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights—bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement." (*E.O.*, *supra*, 188 Cal.App.4th 1149, 1153.)

"[T]he underpinning of a vagueness challenge is the due process concept of 'fair warning.' " (*Sheena*, *supra*, 40 Cal.4th at p. 890.)  "A probation condition 'must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated,' if it is to withstand a challenge on the ground of vagueness.  [Citation.]" (*Ibid*.)

A constitutional challenge to a "probation condition as facially vague and overbroad presents an asserted error that is a pure question of law, easily remediable on appeal by modification of the condition.  [Citations.]" (*Sheena*, *supra*, 40 Cal.4th at p. 888.)  Therefore, such challenges are generally not forfeited for failure to raise them in the trial court.  (*Id*. at p. 889; see also *People v. Pirali* (2013) 217 Cal.App.4th 1341, 1345 (*Pirali*) ["A Court of Appeal may review the constitutionality of a probation condition, even when it has not been challenged in the trial court, if the question can be resolved as a matter of law without reference to the sentencing record."].)

**B.** *Probation Condition 20: Dating, Socializing, and Romantic Relationships*

Bray argues probation condition 20, which limits the group of people with whom Bray may date, socialize, or form romantic relationships "should be stricken in its entirety because it is unconstitutionally overbroad, and unreasonably infringes on [Bray's] fundamental rights to marry and to freedom of association." Alternatively, Bray contends "the term 'socialize' must be removed from the condition as it is unconstitutionally overbroad." At the outset, we note the Attorney General concedes "the 'socialize' restriction should be deleted" as unconstitutionally broad, but argues the remainder should be affirmed. We accept the Attorney General's concession, but for reasons we will discuss, we conclude the probation condition should be even further modified or stricken in its entirety.[5]

This condition does infringe on Bray's right to freedom of association, a right that has been long recognized by the United States Supreme Court. (*Roberts v. United States Jaycees* (1984) 468 U.S. 609, 617.) The question is whether preventing Bray from dating, socializing, or forming a romantic relationship with another adult, who happens to have physical custody of a child, without the permission of a probation officer is closely tailored to the reformation and rehabilitation of Bray such that it overcomes this infringement. (See *Sheena*, *supra*, 40 Cal.4th at p. 890; see also *O'Neil*, *supra*, 165 Cal.App.4th at p. 1356.)

The case of *U.S. v. Wolf Child* (9th Cir. 2012) 699 F.3d 1082 (*Wolf Child*) is instructive and persuasive. In *Wolf Child*, the trial court imposed a condition that the defendant could not "date or socialize with anybody who has children under the age of

---

[5] Appended to the minutes from the sentencing hearing was a form entitled "Standard Sex Offender Recommendations" with checkmarks to indicate which of the standard conditions had been ordered. Number 6 on this form was checked as one of the standard conditions: "The defendant may not date, socialize or form a romantic relationship with any person who has physical custody of a minor unless approved by the probation officer." We have seen multiple appeals from this language. We suggest the Standard Sex Offender Recommendation number 6 on the form be modified or stricken.

18" without "prior written approval of United States Probation." (*Id*. at p. 1089.) The court observed that the category of people covered by this condition was "enormous" and that "[p]robably more than half the people in the United States would be on the 'do not associate list.' [Citation.]" (*Id*. at pp. 1100-1101.) The court stated further that "[i]t is hard to imagine how Wolf Child would be able to develop friendships, maintain meaningful relationships with others, remain employed, or in any way lead a normal life" if he followed this probation condition. (*Ibid*.) The *Wolf Child* court also expressed concern over the prohibition preventing Wolf Child from being "in the company of any child under the age of 18," which would impact his ability to act as a "responsible father to his own daughters" or to be around other relatives such as nephews and cousins. (*Ibid*.) The court therefore concluded the condition was "overbroad and thus not sufficiently limited to achieving the goals of deterrence, protection of the public or rehabilitation." (*Id*. at p. 1100.)

The Attorney General contends "the terms 'date' and 'form a romantic relationship' both clearly describe the pursuit of an intimate or sexual relationship, the nuances of which can be judged accurately by a probation officer." The Attorney General argues further that these terms are "narrowly tailored to the goal of preventing [Bray] from using the guise of a romantic relationship to gain unguarded access to potential underage victims."

While the purpose of the condition may be to keep Bray from having unrestricted contact with minors, it is not carefully tailored to achieve that purpose. The Attorney General has acknowledged the impropriety of the term "socialize," but the restrictions on dating and forming romantic relationships are also overbroad. The condition prevents Bray from dating an individual with minor children or forming a romantic relationship, even if Bray will never encounter those children.

The condition also lacks any knowledge component, such that Bray could go on a "date" and violate the condition despite not knowing the person has "physical custody of

7

a minor." (See *People v. Garcia* (1993) 19 Cal.App.4th 97, 102 [concluding a probation condition that prohibited the appellant from associating with persons who "unbeknownst to him" had criminal records or used narcotics was overbroad].)

Additionally, it is not apparent what specifically would constitute a "date." Would a "date" only cover conduct such as going out to a restaurant or a movie, or would it also include meeting for coffee? Would the time of day matter? Does Bray define "date" or does the probation officer? What if Bray believes he is meeting a new friend, but the other person thinks it is a "date"? Nor is it clear how to distinguish the difference between a date and a romantic relationship. Would Bray need to return for additional approval if he finds that a dating relationship has intensified into a romantic relationship?

In *O'Neil*, the court ordered the following condition: " 'You shall not associate socially, nor be present at any time, at any place, public or private, with any person, as designated by your probation officer.' " (*O'Neil*, *supra*, 165 Cal.App.4th at p. 1354.) In finding this condition constitutionally overbroad, the court noted that the condition does not "provide any guideline as to those with whom the probation department may forbid association." (*Id*. at pp. 1357-1358). Here, the condition similarly does not provide any guidelines for the probation department to permit or deny Bray's request to date, socialize, or form a romantic relationship, much less define what constitutes a violation.

We acknowledge that "[a] limitation on the right to associate which takes the form of a probation condition is permissible if it is '(1) primarily designed to meet the ends of rehabilitation and protection of the public and (2) reasonably related to such ends.' [Citations.]" (*People v. Lopez* (1998) 66 Cal.App.4th 615, 628.) But "[w]ithout a meaningful standard, [an] order is too broad and it is not saved by permitting the probation department to provide the necessary specificity." (*O'Neil*, *supra*, 165 Cal.App.4th at p. 1358.) Because these conditions impinge on Bray's right of association, but only indirectly serve the interest of protecting minor children with whom Bray may never come into contact, probation condition 20 is overbroad. There are other

more narrowly tailored conditions that could be imposed to serve the same purpose of protecting children, such as a requirement that Bray not associate with minors unless a responsible adult approved by his probation officer is present. (See *People v. Urke* (2011) 197 Cal.App.4th 766). And thus, we remand to the trial court to either strike the condition or impose one that is more closely tailored to the purpose of protecting minors in Bray's presence.[6]

## C. *Probation Condition 12: No Internet Access*

Bray argues probation condition 12 limiting Bray's Internet access "should be stricken because it is unconstitutionally overbroad and unreasonably infringes upon [Bray's] fundamental right to freedom of speech."

*Pirali* involved a similar probation condition to the one in this case: " 'You are not to *have access* to the Internet or any other on-line service through use of your computer or other electronic device at any location without prior approval of the probation officer.' " (*Pirali*, *supra*, 217 Cal.App.4th at p. 1345.) As Bray does here, the defendant in *Pirali* argued the probation condition was unconstitutionally overbroad.[7] (*Id*. at p. 1346.)

Noting that "access to computers and the Internet [has] been recognized by courts as increasingly important," the *Pirali* court stated that "certain restrictions on 'access to the Internet necessarily curtail First Amendment rights,' " and "probation conditions restricting or prohibiting the use of a computer, or restricting or prohibiting access to the Internet, 'must closely tailor those limitations to the purpose of the condition to avoid

---

[6] If the trial court decides to modify the condition, we would suggest the court avoid any improper delegation of judicial authority to a probation officer in determining with whom Bray is permitted to or prohibited from associating. (See *O'Neil*, *supra*, 165 Cal.App.4th at pp. 1357-1359; see also *People v. Smith* (2022) 79 Cal.App.5th 897, 903; see also *People v. Leon* (2010) 181 Cal.App.4th 943, 953-954.)

[7] The defendant in *Pirali* also argued the probation condition was unconstitutionally vague. (*Pirali*, *supra*, 217 Cal.App.4th at p. 1346.) Bray raises no such challenge and we will therefore not address vagueness as to this condition.

9

being invalidated as unconstitutionally overbroad.' [Citations.]" (*Pirali*, *supra*, 217 Cal.App.4th at p. 1348.) The court also observed, however, that "courts have . . . permitted probation conditions and parole conditions limiting computer and Internet access in cases where the limitation is not a blanket prohibition, and in cases where the Internet played a role in the underlying offense." (*Id.* at p. 1349.) The court concluded the probation condition restricting Internet use was not overbroad because it was not a blanket prohibition and granted the defendant "the ability to access the Internet on his computer and other electronic devices so long as he obtains prior permission from his parole officer." (*Id.* at p. 1350.)

Observing that access to the Internet has become even more necessary and integral to daily life since *Pirali* was decided in 2013, this Court more recently found that a probation condition prohibiting Internet access, even with exceptions upon probation officer approval, was overly broad and unduly burdensome in most cases. (*People v. Salvador* (2022) 83 Cal.App.5th 57, 67 (*Salvador*).) The Court stated that "[n]o valid purpose is served by preventing [the defendant] from engaging in the kinds of Internet access that have become common and ubiquitous—e.g., performing work-related tasks, accessing or commenting on news sites, or conducting commercial or business transactions in ways that require engaging in protected speech. . . . Access to some part of the Internet is so necessary and frequent as a part of daily life that it may become unduly burdensome to obtain a probation officer's approval for every use of it." (*Ibid.*)

While we do not hold that a blanket Internet prohibition can never be appropriate, we continue to agree with *Salvador* that the Internet today is so enmeshed with society and day-to-day life that such a prohibition that is not narrowly and carefully tailored will be overbroad and restrict a probationer's life in ways that are not sufficiently connected to the goal of rehabilitation.

10

In this instance, the Internet prohibition would prevent Bray not only from performing any work that involves the Internet, but even from applying for jobs[8], whether the jobs involve the Internet or not. Bray would have difficulty filing taxes[9], making appointments, or even just sending and receiving emails. Although Bray could request exceptions from the probation officer, the fact that this would be necessary on a regular (and perhaps daily) basis only serves to further illustrate the wide-ranging and overbroad nature of the condition. The condition would place an undue burden both on Bray and on the probation officer.

Bray used the Internet as the instrumentality to commit this crime, and he himself admits that his access to child pornography grew out of a "rabbit hole" of unfettered file-sharing and image searches. Thus, we agree that a condition to prevent him from accessing child pornography on the Internet is appropriate. Condition 12, however, is overbroad in that it restricts all use of the Internet, including access to websites and email that are necessary in today's society, rather than limiting the restriction more narrowly. For example, the condition could be drafted to permit Bray identified non-recreational uses, or prohibit Bray from visiting websites involving children, entering chat rooms, or accessing file-sharing platforms (all which Bray admitted were involved in the commission of this crime). The trial court ordered many unchallenged conditions that would ensure Bray's compliance with those more specific orders including a prohibition on accessing social media and a waiver of his rights to privacy on all of his electronic devices, including providing passwords and maintaining search history.

We recognize that *Salvador* left a door open to an exception to its ruling on the Internet condition, stating that "[w]ith respect to some offenses—e.g., possession or

---

[8] Obtaining and maintaining employment is a condition of probation.

[9] (IRS launches paperless processing initiative (May 25, 2025), <Irs.gov/newsroom/irs-launches-paperless-processing-initiative> [June 27, 2025], archived at: <https://perma.cc/BT58-WMH4>.)

distribution of child pornography, as in *Pirali*—such a burdensome condition might be justified or necessary." (*Salvador*, *supra*, 83 Cal.App.5th at p. 67.) There are undoubtedly cases where such a blanket prohibition would be appropriate. This is not such a case. We conclude a flat prohibition on all Internet use is neither justified nor necessary here, and we remand the matter to the trial court to strike the condition or consider how to fashion a more tailored restriction concerning Bray's access to the Internet.

**D.** **Probation Conditions 21 and 22: Restrictions on Pornography and Sexually-Explicit Material**

Bray argues probation conditions 21 and 22, regarding Bray's access to pornography, are unconstitutionally vague, and this court should remand to the trial court for the conditions to be modified for specificity.[10] In response, the Attorney General agrees that these probation conditions should be modified. Among other cases, the Attorney General bases this concession on *People v. Gruis* (2023) 94 Cal.App.5th 19 (*Gruis*).

In *Gruis*, "[a]s one of the conditions of probation, defendant was ordered as follows: 'You may not possess any pornographic magazines, videos, pictures or written material or images unless prescribed by a therapist during the course of your treatment.' " (*Gruis*, *supra*, 94 Cal.App.5th at p. 22.) The *Gruis* court observed that "[t]here appears a general consensus among courts, including those upholding no-pornography conditions of probation or supervised release against constitutional challenges, that the terms 'pornographic' and 'pornography,' standing by themselves, are subjective and vague. [Citations.]" (*Id*. at pp. 23-24.) "[T]he term 'pornography' could conceivably encompass many well-known works of artistic and cultural significance featuring nudity or sexually explicit material. [Citation.]" (*Id*. at p. 24.)

---

[10] Bray's counsel did not object to probation condition 21 in the trial court. The parties agree that Bray's facial constitutional challenge to this condition is not forfeited.

Ultimately concluding the probation condition was unconstitutionally vague, the *Gruis* court "remand[ed] the matter with directions to the trial court to either strike the no-pornography condition or modify it consistent with the views expressed in this opinion." (*Gruis*, *supra*, 94 Cal.App.5th at p. 26.) *Gruis* suggested that if the trial court chose not to strike the condition, but to modify it, that the court "craft a nonsubjective definition of 'pornographic' based on sections 311.11(a) and 311.4(d), along with the 'primary purpose' or similar phrasing from *David C.*[11] that would distinguish the prohibited materials from those depicting sexual conduct but having primarily literary, artistic, political, or scientific value." (*Ibid.*, fn. omitted.)

As in *Gruis,* the challenged conditions do not define pornography; they allow for subjective application by a probation officer and they may encompass materials whose primary purpose is not pornographic. (*Gruis, supra,* 94 Cal. App.5th at pp. 25-26). We agree with *Gruis* and conclude probation conditions 21 and 22 are unconstitutionally vague. We accept the Attorney General's concession, and remand with directions to either strike or modify probation conditions 21 and 22 for specificity.

### III.   DISPOSITION

We remand this matter to the trial court to strike or modify probation conditions 12, 20, 21, and 22 in accordance with this opinion. In all other respects, the judgment is affirmed.

---

[11] *In re David C.* (2020) 47 Cal.App.5th 657, 666-667 [concluding that a condition prohibiting possession of materials " 'that have a primary purpose of causing sexual arousal....' " sets a sufficiently clear standard].

_____
RODRIGUEZ, J.*

WE CONCUR:

_____
GREENWOOD, P. J.

_____
LIE, J.

*People v. Bray*
H051237

_____
* Judge of the San Diego County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court:                                    Santa Clara County Superior Court
                                                Superior Court No.: F2201067

Trial Judge:                                    The Honorable Roberta Hayashi


Attorneys for Defendant and Appellant           Julie M. Caleca
DANIEL ALAN BRAY:                               under appointment by the Court
                                                of Appeal for Appellant


Attorneys for Plaintiff and Respondent          Rob Bonta,
THE PEOPLE:                                      Attorney General of California

                                                Lance E. Winters,
                                                Chief Assistant Attorney General

                                                Jeffrey M. Laurence,
                                                Senior Assistant Attorney General

                                                Catherine A. Rivlin,
                                                Supervising Deputy Attorney
                                                General

                                                Allen R. Crown
                                                Deputy Attorney General


*People v. Bray*
H051237